Watts & S.
1ws155
131    93

## Pott *against* Nathans.

If after judgments are obtained against a principal and surety, a third person interposes and gives his note for the debt to obtain a stay of execution for the principal, and the surety is afterwards obliged to pay the debt, he is entitled to have an assignment of the judgment on the note of the third person, to indemnify him for such payment.

ERROR to *Schuylkill* county.

The Philadelphia Loan Company for the use of Nathan Nathans against Benjamin Pott, Charles W. Clemens, and Burd Patterson.

The case was, that George Shoemaker had given his note to the Loan Company, with Nathan Nathans as his endorser; this note was sued, and separate judgments obtained against the drawer and endorser, and execution was issued on the judgment against the principal, upon which his real estate was about to be sold, when Benjamin Pott, Charles W. Clemens, and Burd Patterson, the defendants, gave their note to the plaintiff, and the plaintiff's attorney gave this receipt:

Philadelphia Loan Co. *v.* Shoemaker.    Received, June 11th 1839, of Benjamin Pott, Charles Clemens and Burd Patterson, their note for seven hundred and twenty-eight dollars 54 cents, at sixty days, in my favour, and it is understood that the judgment in the above case is, on payment of the said note, to be transferred to the party paying the same, it having been taken as collateral security for said judgment.

G. W. Farquhar, *Attorney for plaintiff.*

I agree to the above.

Geo. Shoemaker.

After the stay of execution had expired, the judgment was not paid and the Loan Company sued the note of the present defendants and obtained a judgment upon it; after which, the surety, Nathan Nathans, paid the debt, and then obtained this rule to show cause why the judgment against Pott, Clemens and Patterson should not be marked for his use, to enable him to indemnify himself for the money paid.

The court below thus ruled the question:

Parsons, President.—The note of the 11th of June 1839, was not paid at maturity, and a suit was brought and the present judgment recovered on the same.   After this judgment was obtained, Nathan Nathans, the original endorser, paid the original debt to the Loan Company, and now asks to be substituted to the

rights and all the security which they have, and the question is, whether in equity he is entitled to be thus substituted, and this court think that he is, and it makes no difference whether those securities were obtained by the plaintiff before or after his liability. The case of *Parsons & Cole* v. *Briddock*, (2 *Vern.* 608) rules the present case, and decides the whole ground, and if an English Chancery decision is of any force in Pennsylvania,. that case ought to govern us. And the same doctrine is recognised in *Theobald on Surety* 253; 11 *Vezey* 12; 2 *Vezey* 543; and the case of *Fleming* v. *Beaver* (2 *Rawle* 128) goes the length which this court now decide; and what right have the present defendants to complain or resist this substitution? They contracted to pay the debt to the Loan Company if Shoemaker did not. Has he paid it? That is not pretended. The Loan Company could compel them to pay it; their promise and obligation were sacred, and they made a positive contract so to do. Do not the law, justice and equity require them to fulfil it? By their giving this note as collateral security and suspending the sale of Shoemaker's property, the original endorser has been compelled to pay the money—then perhaps the sale might have gone on, and the debt of the Loan Company might have been paid out of the proceeds. It is well settled as the law, and too firmly to be shaken, that when a security pays the debt of his principal, all the rights of the creditor enure to his benefit, and he shall be subrogated to the plaintiff's rights. It would be a waste of time to cite authorities to this plain principle — nor are there any exceptions made in the rule. Can the defendants, then, complain if the court apply that rule in the present case? We think not; and therefore order the rule absolute.

*Parry*, for plaintiff in error. The rule is undoubted, that a surety upon paying the debt is entitled to substitution against the principal, but it will not give him a right of action or entitle him to any remedy against another surety having no connection with himself in point of obligation, and between whom there is no privity of contract. 3 *Wheat.* 520. Besides, the relation of principal and surety ceases after judgment, and therefore the equitable principle of the right to substitution is not applicable. 16 *Serg. & Rawle* 252; 18 *Eng. Com. Law* 273; 5 *Johns. Chan.* 305; 9 *Eng. Chan. Rep.* 110; 4 *Johns. Chan.* 130; 1 *M'Cord* 115. And this case is even stronger; for here it was an additional security acquired after judgment, not forming a part of the judgment itself, as in the case of *Burns* v. *Huntingdon Bank*, 1 *Penn. Rep.* 395, but collateral to it.

*Hughes*, for defendant in error. The general principle is as peculiarly applicable to this case as the reason for it can be applicable to any case. There is no equitable reason why Mr Na-

[Pott v. Nathans.]

thans should pay the money, being a naked surety; and if, when the money was about to be realized from the principal, the present defendants interposed their obligation to pay the money, why should they obtain what they sought for the principal at the expense of the endorser.    *Theob. on Prin. & Surety* 186; 2 *Vern.* 608; 9 *Watts* 451; 2 *Rawle* 128; 1 *Penn. Rep.* 395; 14 *Vez.* 164; 10 *Serg. & Rawle* 12; 2 *Bin.* 382; 9 *Serg. & Rawle* 302; 3 *Penn. Black.* 516; 8 *Serg. & Rawle* 152.

The opinion of the Court was delivered by

SERGEANT, J.—The general doctrine that a surety who pays to the creditor the debt due by his principal, shall enjoy the benefit of the securities for the debt placed in the power of the creditor by the principal, has been acted on by courts of equity, and recommends itself to our sense of justice. It seems right, that the creditor should transfer the means of indemnification, for which he has no longer occasion, to him who, under a legal obligation to pay, in default of the principal debtor, has released these securities from the demand of the creditor, and paid the debt for which they were furnished. Where, however, such means consist of the responsibility of an individual, becoming a later surety or guaranty for the same debt of the principal, there arises a conflict of equities, which may give rise to new questions as to priority between the former and the latter surety. Such latter surety, stipulating at the instance of the principal to pay the debt, suffers no absolute injustice in being obliged to do so, since he is compelled to perform no more than he undertook, and has no right to complain that he is not allowed to use, as a payment by himself, the money which proceeds from another person whom his principal was previously bound to save harmless. How the equity would be, in a naked case of this kind, I give no opinion; it is sufficient that it is settled, that if the interposition of the second surety may have been the means of involving the first in the ultimate liability to pay, the equity of the first surety decidedly preponderates.

This principle seems to have been determined by this court, in the case of *Burns* v. *The Huntingdon Bank*, 1 *Penn. Rep.* 395, which I am not able to distinguish from the present. There a judgment was obtained against the maker of a promissory note, who afterwards entered absolute security, under the Act of Assembly, in order to obtain a stay of execution. After the expiration of the time stipulated in the stay of execution, judgment was obtained against the surety, and it was held that one of two endorsers who paid the note was entitled to an assignment of the judgment against the surety. The case now before us is also that of an endorser, who is in point of law but a surety, and is entitled to all the rights and remedies of a surety. One of those rights is to be subrogated to the means of indemnity, in the hands

I. — O

[Pott v. Nathans.]

or under the control of the creditor, if the surety steps into the place of the principal, and pays his debt. The creditor here was the Philadelphia Loan Company; and when Nathans paid, as endorser, the right of the Company against Pott, Clemens & Patterson was complete by virtue of the promissory note of the 11th of June 1839, taken by the attorney of the company from Shoemaker, as collateral security for their judgment against him. The receipt for the note given by the attorney, was an engagement for a stay of execution till the time of its payment; for it stipulates that on paying the note the judgment should be transferred to such of the makers as should pay it; and the attorney immediately stayed proceedings on the execution. The execution had been levied on the real estate of the principal, when the three makers of the note interposed, and procured its stay, by giving their note. So that it runs parallel with the case of *Burns* v. *The Huntingdon Bank*, where the stay was obtained by the entry of absolute bail for the payment of the money. The equity in that case was held to arise from the interposition of the bail to procure a personal advantage to the principal, to the detriment of the surety, who might perhaps have been exonerated, had not the proceedings been stayed against the principal.

Several cases have been cited, in which it has been held, that the relation of principal and surety ceases, as respects the creditor, after judgment. But the contrary doctrine seems to have been held in the case above mentioned, and also in that of *Commonwealth* v. *Haas*, 16 *Serg. & Rawle* 252, where, after judgment, the creditor issued execution against the principal, and levied on his goods and chattels, and it was held, that the surety was discharged to the amount which the goods would have sold for. These cases show that after judgment the creditor is required not to abandon the means in his hands, which might prove available for the relief of the surety, nor to do any act which may prejudice the surety.

Judgment affirmed.