## La Farge *vs.* Herter and Dillenback.

Where a creditor, *with the knowledge and assent of a surety*, gives further time of payment to the principal debtor, on receiving a new security from him, such assent will take the case out of the rule, and the reason of the rule, by which sureties are held to be discharged by a dealing with the principal.

In this state equity recognizes and protects the relation and rights of a surety, after as well as before judgment. And the same rule extends to courts of law.

The right of subrogation, although originating in courts of equity, is now fully recognized as a legal right; and any act of the creditor which interferes with that right, and is a fraud upon it, operates to discharge the surety, as well at law as in equity.

In an action against one as surety, the suretiship being established, whatever would discharge the surety in equity will discharge him in a court of law.

The recovery of a joint judgment against principal and surety does not merge the suretiship of the surety, and render him a principal debtor.

Where, after the recovery of a judgment against principal and surety and a levy upon the property of the principal, the creditor took a bond and mortgage from the principal, for the amount of the judgment and in absolute payment thereof, and acknowledged satisfaction of the execution, by an indorsement thereon, and afterwards brought an action upon the judgment; *Held* that in such action the suretiship might be proved by evidence *aliunde;* and that such fact being established by the evidence, the circumstances constituted a defense to the surety.

*Held also,* that in such action upon the judgment, the plaintiff could not be allowed to prove that the bond and mortgage thus taken by him in satisfaction of the judgment were usurious and therefore uncollectable.

*Held further,* that the case would be different had the plaintiff attempted to foreclose the mortgage and the mortgagor had set up the usury. That might give to the plaintiff all the rights resulting from the invalidity of the bond and mortgage. But his remedy upon the judgment, even then, would only be revived against the mortgagor, and not against his co-defendant; whether the latter was a surety or not.

Where a creditor accepts from a debtor his bond, secured by a mortgage upon real estate, for the amount of a judgment and other demands, against the mortgagor, which bond and mortgage are intended and received as a payment of the judgment, the judgment will be deemed satisfied and extinguished, and no recovery can be had thereon.

THE plaintiff moved for a new trial, upon a bill of exceptions taken on the third trial of the cause. For reports of the case upon the former trials see 3 *Denio,* 157, and 4 *Barb. S. C. Rep.* 346. Upon the last trial the plaintiff proved the judgment, and

the defendant proved the issuing of the execution and the settlement by the bond and mortgage of Herter, and the receipt of the plaintiff, as reported in 4 *Barbour ;* and he also proved, under objection, that Dillenback was the surety of Herter in the note upon which the judgment was recovered. The plaintiff proved by Dillenback that he, Dillenback, was present at the giving of the bond and mortgage to the plaintiff, and did not object to the arrangement, but assisted in the negotiation; and offered to prove that the mortgage was usurious, and that he commenced proceedings to foreclose the same by advertisement, when Herter threatened and took steps to institute proceedings in equity to set aside the mortgage, for usury. Dillenback made an affidavit in such proceeding, and the plaintiff discontinued the advertisement and commenced this action. This evidence, upon objection being made, was excluded by the court, and the plaintiff excepted. The court decided that the plaintiff ought not to recover, and directed a verdict for the defendants; to which the plaintiff excepted.

*J. Clarke,* for the plaintiff.

*B. Bagley,* for the defendants.

*By the Court,* ALLEN, J. The plaintiff moves for a new trial upon several exceptions taken at the trial, to the ruling and decision of the judge. I. The first exception upon which the plaintiff relies is to the admission of evidence that Dillenback was a surety for Herter in the note upon which the judgment, which is the foundation of this action, was recovered. The ground of the objection was that the suretiship was merged in the judgment, and that both defendants, by the recovery of the judgment, became principal debtors. And the counsel relies upon the decision of the court in this case, reported 3 *Denio,* 157, and *Hubbell* v. *Carpenter,* (2 *Barb. S. C. Rep.* 484.) It is not indispensable to the decision of this cause to decide this question. The decision at the circuit was not based upon the mere fact of suretiship and a dealing with the principal debtor

La Farge v. Herter.

to the prejudice of the surety. If it had been, the decision would have been clearly wrong, for the manifest reason that the dealing established by the evidence was with the knowledge and assent of the surety, which would take the case out of the rule, and the reason of the rule by which sureties are held to be discharged in such cases. (*Story's Eq. Jur.*. §§ 324, 326. *Tyson* v. *Cox*, 1 *Tur. & Russell*, 395. *Gahn* v. *Niemcewicz*, 11 *Wend.* 317, 325. *Greely* v. *Dow*, 2 *Met.* 176. *Combs* v. *Woolf*, 8 *Bing.* 136. *Rees* v. *Benington*, 2 *Ves. jun.* 540.) The final decision of the cause was upon the whole case, and may be sustained upon the ground that the judgment was paid by the bond and mortgage of Herter. But with a view to establish the intent of the parties, to give character to the transaction, and show that it was understood and designed that the judgment should be merged in and satisfied by the new security, it was highly proper to show the relation of the parties, and that the debt was the proper debt of Herter; whether the technical relation of principal and surety subsisted between the debtors, as against the plaintiff, or not. And the force and effect of this evidence, in this view, will be considered in connection with another point in the cause. If, however, Dillenback was technically the surety of Herter for the payment of the debt, notwithstanding the judgment, then most clearly the judgment was satisfied and paid by the bond and mortgage. An execution had been issued upon the judgment, and levied upon the property of Herter, the principal debtor, and that was released and the execution indorsed satisfied, upon the giving of the new security for this and other debts of Herter. And after the consummation of the arrangement the plaintiff told Dillenback that he was then "out," that is, that the judgment was satisfied and he relieved from his liability. The surety had a right to treat this as a satisfaction of the judgment. It was so treated by the plaintiff, and it would be unjust now to suffer him to recall his words and revoke and annul the transaction, to the prejudice of the surety. (*Baker* v. *Briggs*, 8 *Pick.* 122. *Carpenter* v. *King*, 9 *Met.* 511.) Was the relation, then, of principal and surety between the judgment debtors merged in

the judgment, or did it continue as before? Did we suppose that this question had received that full and deliberate consideration to which it is entitled, when this case was before the late supreme court, we should feel bound to follow the decision of that court as reported in 3 *Denio,* but we are assured that this point, if in fact made by counsel upon the argument, was not considered or argued by them, and was passed upon by the learned judge without that mature deliberation and thorough examination which he was accustomed to bestow upon causes before him, and upon the supposed authority and analogy of the cases cited by him in his opinion. Even under these circumstances we venture to differ with that court with great diffidence, and would not do so if we were not, upon a full examination, constrained to believe that the decision is very clearly wrong, and one which would not have been pronounced by that tribunal except in a great press of business, and without a full investigation. In *Storms* v. *Thorn,* (3 *Barb. S. C. Rep.* 314,) I came to the conclusion that in equity the relation of suretiship existed, notwithstanding the recovery of a joint judgment against the debtors ; and in my opinion in that case I briefly examined the cases referred to and relied upon by Beardsley, J. in 3 *Denio,* except those of *Pole* v. *Ford,* (2 *Chit. Rep.* 125,) and *Findlay* v. *Bank of the United States,* (2 *McLean's Rep.* 44.) In *Pole* v. *Ford,* the defendant, against whom a judgment had been recovered as drawer of a bill of exchange, moved that satisfaction of the judgment be entered, on the ground that judgment had been recovered against the drawer upon the same bill, and upon the latter judgment an execution had been sued out and levied upon the goods of the drawer and afterwards waived and time given to him. The motion was denied; the court determining that the rule that giving indulgence to an acceptor, without the consent of the drawer, discharges such drawer, did not apply after judgment. No reason is assigned. This case was followed in *Bray* v. *Manson,* ( 8 *M. & W.* 668,) not as settling the principle that the relation of principal and surety was merged in the judgment, but as an authority that the court would not interfere in such case upon affidavit; and Park, B.

held there could be no relief unless there was a remedy in equity, which he did not decide, and does not appear to have considered as settled adversely to the surety by *Pole* v. *Ford.* It is, perhaps, proper to say in this place that the courts of this state have not, in all respects, followed the decisions of the English courts, and particularly the earlier decisions, relating to the rights, liabilities and duties of sureties, and that our own decisions have been more favorable in some respects to sureties than the earlier decisions of the English courts. But the case of *Findlay* v. *Bank of United States,* is directly in point to sustain the decision of this case in 3 *Denio;* for if the suretiship is merged by the judgment, so that no relief can be had in equity for causes which, before judgment, would have operated to discharge the surety, it follows that such matters would not avail the surety at law. In the protection of sureties law has followed equity, rather than equity the law. Courts at law have, from time to time, authorized and sustained defenses which have been held in courts of equity to entitle the surety to relief, in order to avoid the necessity of invoking the aid. of the latter court. This case is reviewed by Harris, J. in *Hubbell* v. *Carpenter,* (5 *Barb. S. C. Rep.* 520,) in connection with the doctrine as applicable to courts of equity. In addition to the comments of Judge Harris, it may be remarked, that Judge McLean concedes the principle that the relation of principal and surety exists after judgment, and overthrows, to some extent, his own reasoning, by conceding as he does that the surety has an equity remaining in his favor as surety, and as an incident to that relation after the judgment, in the right of substitution on the payment by him of the judgment. Now it is this right of substitution—a right of subrogation to all the rights and remedies of the creditor against the principal debtor —that entitles the surety to relief on account of dealings with the debtor in derogation of these rights. So long as that, equitable right exists, so long they are the subjects of fraudulent interference by the creditor, and the suretiship of the party is necessarily recognized. The recognition of the equitable right concedes the relation to which that right attaches, and places

the party under the protection of the court, in virtue of the character to which the right is incident. Will it be said that an equitable right exists, and yet that courts of equity will not recognize it and protect it, and that upon the merest technicality imaginable? I think not. The right of subrogation is but an equitable right upon judgment, recognized for certain purposes by courts of law, and after judgment Judge McLean concedes the same equitable right to exist. Why, then, do not the same relative duties and obligations exist which before judgment are incident to that right, viz. the duty and obligation of the creditor to forbear the doing of any act which will interfere with this right? I am unable to see. That in this state equity would recognize and protect the relation and rights of the surety after as well as before judgment, I think there can be no reasonable doubt. (*See Curran* v. *Collect,* 3 *Kelly,* 239 ; *Brown* v. *Riggins, Id.* 405 ; *Bank of Ireland* v. *Beresford,* 6 *Dow.* 233 ; *Mayhew* v. *Crickett,* 2 *Swanst.* 193.) Does the same rule extend to courts of law, or shall a party be driven to a court of equity to enforce his rights? The right of subrogation, although originating in courts of equity, is now fully recognized as a legal right, and any act of the creditor which interferes with that right, and is a fraud upon it, operates to discharge the surety, as well at law as in equity ; and if the right of subrogation is admitted to exist after judgment, then all the legal consequences must attach to an infringement of that right. (*See Parsons* v. *Briddock,* 2 *Vern.* 608.) In *Wayne* v. *Keely,* (2 *Bailey,* 551,) the court held that in an action against one as surety, the suretiship being established, whatever would discharge the surety in equity would discharge him in a court of law. And this appears to be the effect of the decisions in the leading cases in this country. (*See Niblo* v. *Clarke,* 3 *Wend.* 24 ; 6 *Id.* 236 ; *Fleming* v. *Gilbert,* 3 *John.* 528.) The decisions in the English courts have not been in accordance with this principle, and have not been uniform upon this point. (*See Orme* v. *Young,* 1 *Holt,* 34 ; *Laxton* v. *Peat,* 2 *Camp.* 185 ; *Fentum* v. *Pocock,* 5 *Taunt.* 192 ; *Price* v. *Edmunds,* 10 *B. & C.* 578 ; *Ashbee* v. *Pidduck,* 1 *M. & W.* 564 ; *Bell*

v. *Banks,* 3 *Scott's N. R.* 503.) The principle of *Fentum* v. *Pocock,* and *Price* v. *Edmunds,* conflicts with the decisions of the courts of this state in *Suydam* v. *Westfall,* (4 *Hill,* 211;) *Griffith* v. *Reed,* (21 *Wend.* 502,) and *Wing* v. *Terry,* (5 *Hill,* 160.) *And see Harris* v. *Brooks,* (21 *Pick.* 195.) That, the courts in England are disposed to depart somewhat from the narrow limits within which they have been confined by the decisions based solely upon the technical rules of the common law, and apply the doctrines of equity to actions against sureties, see *Stone* v. *Compton,* (5 *Bing. N. C.* 142, *per Tindal, C. J.*) If a surety can in any case avail himself, in an action at law, of a defense based upon a violation of his equitable right of subrogation or other rights incident to his character as surety, why not in all cases; and if not in all cases, where shall the line be drawn excluding some and admitting other defenses of that character? The principle once established, that an act of the creditor to the injury of the surety operates in his discharge at law, in any case, all cases within the principle must be decided by it. There may be cases in which a party may be driven to a court of equity, for the reason that the forms of procedure in courts of law are not adapted to the relief. But these are cases in which the surety seeking the relief is the actor and calls the creditor into court. In such case the only relief in a court of law would be after judgment, and by motion, and the court would not, perhaps, following the case of *Pole* v. *Ford,* interfere upon affidavit. But the case is different where the creditor comes into the court as plaintiff. In such case the surety should be permitted to avail himself at law of any defense which, by the established rules of law, would entitle him to an unconditional discharge in courts of equity. Where there is nothing addressed to the discretion of the court, the rules by which the two courts are governed, in adjudicating upon the rights of parties, are the same. In *Commonwealth* v. *Miller,* (8 *S. & R.* 452,) which was a *scire facias* upon a judgment against a sheriff and his sureties, it was held that a dealing by the creditor with the principal, by way of indulgence, to the injury of the sureties, although after judgment,

La Farge *v.* Herter.

discharged them, and constituted a defense to the action. (*See also Lichtenthaler* v. *Thompson,* 13 *Serg. & R.* 157 ; and *The Commonwealth* v. *Haas,* 16 *Id.* 252 ; *Dixon* v. *Ewing,* 3 *Hammond,* 280 ; *Mayhew* v. *Crickett,* 2 *Swanst.* 193 ; *Bank of Steubenville* v. *Leavitt,* 5 *Ham.* 207.) *Carpenter* v. *King,* (9 *Met.* 511,) is decisive of this case and of every question in it, if it is to be followed by us. The court in that case held, and the ruling is sustained by a well reasoned opinion of Shaw, C. J., 1. That when two persons jointly or jointly and severally sign an obligation for the payment of money, one of them may show by evidence aliunde that he was surety for the other. 2. In an action of debt on judgment, brought against a surviving debtor who signed the obligation on which the judgment was rendered, either jointly or jointly and severally with the other judgment debtor, he may show by evidence aliunde that he signed that obligation as surety for the other debtor ; and 3. That if a creditor informs a surety that the debt is paid, and the surety afterwards relinquishes security which was given him by the principal, this is a good defense to an action brought by the creditor against the surety, though the creditor did not intend to deceive or mislead him. It is true that in this case the surety did not relinquish any security which had been given to him by the principal debtor, but the property of the debtor was released from the levy upon the execution, and which, but for this arrangement, would have enured to the benefit of the surety, and he was told by the plaintiff that the judgment was satisfied, and he had a right to and did rely upon such representation. (*See also Potts* v. *Nathan,* 1 *W. & S.* 155 ; *Carpenter* v. *Derow,* 6 *Alab. Rep.* 710, *and The Commercial Bank* v. *The Western Reserve Bank,* 11 *Ohio Rep.* 144.) Upon the authority of these cases, as well as upon the reason of the rule by which the rights of sureties are recognized and protected in courts of law, we are of the opinion that the suretiship of Dillenback was not merged in the judgment, and that in this action it was properly shown by evidence aliunde, and that being proved, the facts established by the evidence constituted a defense to him in this action.

La Farge *v.* Herter.

II. The next question presented by the bill of exceptions arises upon the offer of the plaintiff to prove that the bond and mortgage, taken by him as is alledged in payment of the judgment, was tainted by usury, and the exclusion of the evidence by the justice. The usury alledged by the plaintiff could not exist against the will, or without the voluntary assent of the plaintiff. The reservation of a greater rate of interest than that allowed by law, by mistake and without design on the part of the creditor, would not constitute usury. A corrupt agreement is necessary ; and the intent enters into and forms an essential ingredient in the facts going to establish the offense. The plaintiff then seeks to establish his own corrupt and illegal agreement, upon which to base his right to recover in this action. The victim of the usurer is allowed to do this by law, upon principles of public policy. It is because he is the victim and not a voluntary actor in the illegal transaction. But this reason does not apply to the usurer, and there appears to be no good reason why he should not, upon well established principles, be precluded from giving evidence of his own illegal acts. If the taking of the bond and mortgage would, but for the usury, be a satisfaction of the judgment, he ought not to be permitted to say that in taking that security he violated the laws of the land and therefore the judgment was not satisfied. The legality of his acts should, as against him, be presumed, and he should be estopped from alledging against this presumption. It is true the plaintiff does not base his action directly upon the bond and mortgage, which, if they are usurious he could not sustain, but upon a cause of action which has been merged in and satisfied by such bond and mortgage, unless by reason of the immoral and illegal act of the plaintiff himself the latter securities are nullities. It is indirectly an attempt to evade the principle that *ex turpi causa non oritur actio.* As a general rule, a party to a fraud is estopped from setting it up as a defense ; with this qualification, however, that when the plaintiff alledges the fraud, and proves it as a part of his own case, there is no rule of law which can prevent the defendant from taking all the benefit as well as incurring all the disadvantages which may result from such a

state of things. Applying this principle to this case, the plaintiff should be estopped from alledging his own cupidity and fraud. The case would be different had he attempted to foreclose the mortgage and the mortgagor had set up the usury. That might, within the principle, give to the plaintiff all the rights resulting from the invalidity of the bond and mortgage, and it is upon this principle that the cases relied upon by the plaintiff proceed. But in that case I apprehend the remedy of the plaintiff upon the judgment could only be revived against the mortgagor and not against the other defendant, whether he was a surety or not. We adhere, upon this question, to the opinion expressed in this cause on a former occasion and reported in 4 *Barb. S. C. Rep.* 346. In *Hughes* v. *Wheeler*, (8 *Cowen*, 77,) the plaintiff brought an action upon a note which had been given to take up a prior note, and the defendant set up the defense of usury. The court say that the plaintiff may upon the common counts recover the consideration of the note, so far as it was not affected by the usury, and that consideration was the original note. The plaintiff did not in that case, in an action directly upon the original note, seek to establish the usury in the second note. The usury was proved by the party for whose benefit the statute against usury was passed and to whom the right to set it up was secured. The same principle was followed in *Rice* v. *Willing*, (5 *Wend.* 595.) The decision in *Dix* v. *Van Wyck*, (2 *Hill*, 522,) is to the effect that usurious contracts, notwithstanding the words of the act, are merely voidable at the instance of the borrower or some one in legal privity with him, and that they may be ratified and performed; that they are not void, and can not be avoided by a stranger. In *Crippen* v. *Heermance*, (9 *Paige*, 211,) the chancellor held that upon a bill filed to foreclose a mortgage given for purchase money, to which the defendant interposed the defense of usury, which was established, the plaintiff was entitled to a decree for the amount due upon the contract for the land at the time the mortgage was given, as an equitable lien upon the premises. This was doubtless right, upon the principle alluded to, if the bill was framed as it doubtless was, so as to present the case upon which the plaintiff finally had

La Farge *v.* Herter.

relief. It will be seen that in this action at law the plaintiff has not counted and could not have counted so as to entitle himself to relief in the alternative. In *Crippen* v. *Heermance*, as in the other cases cited, the allegation of usury came from the party protected by the statute. We are also referred to the remarks of Justices Bronson and Jewett in *Vilas* v. *Jones*, (1 *Comst.* 274.) But the remarks of those judges in that case, even if necessary to the decision, would not affect the question now before us. In that case the surety, in establishing the contract by which he claimed to be exonerated, necessarily proved the consideration ; for, without a consideration the agreement to extend the time of payment was invalid, and in showing the consideration established the fact that it was one not allowed by law ; or in other words, that there was no sufficient consideration to support the agreement. And such were the cases cited by Bronson, J. from *B. Monroe's Reports.* But not so in this case. The mortgage being under seal is evidence of a consideration, and none but the mortgagor or some one in privity with him, can alledge the consideration to be usurious. It can not be known that he will choose to avoid the mortgage for that reason. In *Miller* v. *Kerr*, (1 *Bailey*, 4,) it was held that the usurer could not prove a security taken by him to be usurious, for the purpose of enabling him to resort to a prior obligation which was the consideration of the usurious agreement ; and we think this decision consistent with good morals and with reason and authority. There is no estoppel in the case. Especially as against Dillenback is there no estoppel. There is no allegation of a fact by either of the defendants which was unknown to the plaintiff, and upon the faith of which the latter acted, which should now preclude the defendant from speaking the truth. But it is not a question of evidence or estoppel : it is upon the right of the plaintiff to alledge the fact in this action, and we are of the opinion that the evidence was properly excluded.

III. The next and remaining exception is to the ruling of the judge at the close of the evidence, and upon the whole case. The judge ruled that the plaintiff ought not to recover against Dillenback, and directed a verdict in favor of the defendants.

1. If Dillenback was a surety for Herter, then the judgment was, as against him, satisfied, and the plaintiff was not entitled to recover. The plaintiff had taken other security from Herter for this and other debts, professedly in satisfaction, not collaterally but in absolute payment. He had so said by his receipt and the indorsement of his attorney on the execution, and by his release of the property of Herter from the levy, and his remark to Dillenback. But for this act of the plaintiff the execution would have been levied of the property of the principal debtor, and the surety discharged. *Non constat* that the surety would have assented to a discharge of the property of his principal debtor from the execution and to continue liable for an indefinite time. 2. If the suretiship is merged in the judgment, I think the same result must follow. In Pennsylvania it has been so decided. The courts of that state have held in *The Commonwealth* v. *Haas*, (16 *Serg. & Rawle*, 252,) that even when both judgment debtors are primarily bound, a discharge by the plaintiff of the property of one of the joint debtors from a levy upon execution discharged the other. (*See also Same* v. *Miller*, 8 *Id.* 452; *Dixon* v. *Ewing*, 3 *Ham.* 280.) The plaintiff assumes to deal with and treat one as the sole debtor, and to look to him alone, by taking new securities from him and releasing those by which the joint debt is secured. The debtor who has given his security and procured a discharge of the joint debt, has the right to call upon his co-debtor for contribution in cases where contribution upon payment is allowable. 3. But lastly, the bond and mortgage of Herter, for the amount of the judgment and other demands, were intended and received as a payment of the judgment. The judge was not requested to submit any question of fact to the jury. By his silence upon that subject the plaintiff's counsel conceded that the court properly took upon itself the decision of that question and the final disposition of the cause. Indeed there were no disputed facts. The only dispute was as to a conclusion of law from the facts proved. The facts proved were 1. The recovery of the judgment; 2. The issuing of an execution thereon and a levy upon the property of Herter; 3. The giving of the bond and mortgage of Herter for

La Farge *v.* Herter.

an amount larger than and including the debt due to the plaintiff; 4. The receipt of the plaintiff for that amount as paid; 5. The payment of the costs to the plaintiff's attorney; 6. The indorsement of the execution satisfied, by the plaintiff's attorney; and 7. The release of the property from the execution, and the declaration of the plaintiff to Dillenback, in substance that the judgment was satisfied. In opposition to these facts no circumstances were given in evidence tending to show that the intention of the parties was other than that clearly expressed by their acts and their written and oral declarations. There was then no question of intent to be submitted to the jury, had the plaintiff then requested it and laid the foundation for the point which he now makes upon this branch of the case. The jury would not have been authorized upon the evidence to find a different intent of the parties and that the bond and mortgage were not received in payment of the judgment. It is not necessary to review the cases bearing upon the question of payment, in cases like the present. Most if not all the cases in which a question of this kind has been made have been cases in which the failure of the creditor to realize his debt from the substituted securities has arisen from no act or default of his own, but from some defect in the security of which he was ignorant, or from some contingency beyond his control, and which was unlooked for and unprovided for, and are therefore in principle not strictly applicable to this case. The leading cases are examined and reviewed by Lott, senator, in *Waydell* v. *Luer*, (3 *Denio*, 410,) and the rule deduced from them that the giving of a promissory note for a copartnership debt by one of several partners individually after the dissolution of the copartnership, under an agreement by the creditor to accept it in payment of the debt, extinguishes the liability of the other copartners. The opinion of Senator Lott was concurred in by Gardiner, president, and they, together with seven other of the twelve senators who concurred in pronouncing judgment in the cause, I infer adopted the reasoning and conclusions of Mr. Lott on that occasion. I so infer for the reason that the other three senators voting with the majority of the court state their reasons for doing so, and in what respect they

La Farge v. Herter.

differ from their brethren while agreeing in the result. We adopt the conclusions of Senator Lott as the law of the land, for the reason that we suppose they were adopted and settled by the court of last resort in the state, and also because we think them abundantly fortified by authority and by the reasoning of the learned senator. And if that case was rightly decided upon the ground already stated, then beyond all question this case was properly disposed of. The plaintiff not only received the obligation of one of the debtors, and that the principal debtor, but that was secured by a mortgage upon real estate, and the other debtor, who was and was known to be a mere surety, was told that he "was out," that is, no longer liable upon the judgment, and was thus induced to suppose that the judgment was in truth satisfied and paid. But the ruling and decision in this case can be sustained upon principles conceded to be well established by every senator taking part in the decision of *Waydell* v. *Luer*. Those who dissented from the decision in the cause concede that if additional security should be given, that would be a good consideration for an agreement to accept of the substituted security in satisfaction of the primary obligation. (*Per Porter, senator, p.* 422.) In this case the intent, understanding and agreement of the parties is beyond all question, and the consideration is abundant, to wit, the mortgage upon real estate to secure not only this debt but other debts which were not before secured, and for aught that appears were insecure. Senators Tallcott, Hand and Johnson place the decision of the case referred to upon the ground that there was some evidence that a note of a third person had been delivered in satisfaction of a part of the partnership debt, while the note of one of the partners had been given for the residue; and if so, that the original debt was discharged. If they were right, then in this case the plaintiff can not recover upon the judgment. It is satisfied and paid by the new securities for this and other debts. The plaintiff can not be permitted to hold the bond and mortgage as he does for the debts other than the judgment, and resort to the judgment for the amount covered by it. Probably he could not have obtained the security for his other debts, had he not

consented to include the judgment and to give a day of payment for the whole. The debts are merged and have become one debt, secured by the mortgage. Again; Dillenback may well insist, upon the evidence, that the plaintiff is estopped from alledging that the judgment was not paid. It is unnecessary to consider at length either this suggestion or the other point made by the defendants' counsel, that the bond and mortgage were in any view taken as payment *sub modo*, and that the plaintiff must first resort to them, and exhaust his remedy thereon before he could resort to his original cause of action: for the reason that the other grounds, we think, are fatal to the plaintiff. Among the cases however, which may be referred to upon these points, are the following: *Dezell* v. *Odell*, (3 *Hill*, 215;) 4 *Barb. S. C. Rep.* 353, *and cases cited.*

The motion for a new trial is denied.

[Onondaga General Term, November 4, 1850. *Gridley, Allen* and *Hubbard*, Justices.]