## Moore *v.* Beasom.

Every one may exercise the right of redemption who is interested in the mortgaged estate, or who comes in as privy in estate with the mortgagor ; and redemption will be decreed according to the priority of the claimants.

A third person, paying the debt of the mortgagor, may be substituted in his place, and retain the mortgage for his own protection, and without any written assignment of the mortgage.

The payment of part of a mortgage debt to the mortgagee, or a part of the purchase money to the purchaser of an equity of redemption, under a verbal agreement for the postponement of the payment of the balance due, will operate as a waiver of the forfeiture of the estate, and prevent a foreclosure of the mortgage.

REPLEVIN, for a lot of hay in the barn of the defendant Reed, raised in 1857, on a tract of land in Nashua, heretofore mortgaged

by Hartshorn & Ames to the Nashua Savings Bank, and afterward by one Minasian to the Indian Head Bank, he having before received a deed of it from Hartshorn & Ames.

The hay was cut by the defendants under a claim of title in McQuesten, or the Indian Head Bank, but derived through said Hartshorn & Ames, and the plaintiff claimed title also from them. Upon the trial of issues upon the question of property in the plaintiff, it appeared that on the 11th day of March, 1857, Hartshorn & Ames conveyed, but without consideration, whatever interest they had in the land to the plaintiff, the daughter of said Hartshorn; also, afterward, on the same day, paid to the Nashua Savings Bank the amount due on their aforesaid mortgage, being $1,015, and she contended that the transaction was in fact a purchase of the mortgage debt, with the mortgage as an incident; that however that might be, the law, under the circumstances, would, for the purposes of justice, treat it as an assignment.

On the other hand, it appeared that on the 23d day of January, 1858, the equity of redemption of Hartshorn & Ames in that land was sold on execution against them in favor of George and Samuel McQuesten, and conveyed by the sheriff to the said McQuestens, who were the purchasers at $87.82; and as there had been no redemption from that sale, the defendants contended that nothing whatever passed to the plaintiff by the deed of Hartshorn & Ames to her, and thereupon an assignment of the savings bank mortgage would not be implied as matter of law; and they further contended that there was no evidence upon which the jury could find an actual assignment.

Upon these points it appeared that on the 17th day of September, 1858, the said Hartshorn made an agreement with A. P. Hughes, the attorney of the said McQuestens, and with their consent, that they would receive of the said Hartshorn $74 in full discharge of their aforesaid execution, costs, and sale of equity, amounting in all, with the officer's fees, to $87.04; and thereupon the said Hartshorn, with money furnished by the plaintiff, paid to said Hughes $60 toward the $74, and took his receipt of that date, acknowledging the payment by Hartshorn of that sum, to be applied in payment of that execution, with an agreement that, on payment of $14 more, a full discharge of the execution, costs and sale of equity should be given to said Hartshorn; which agreement may be read at the hearing.

It did not, however, appear that the $14 was ever paid, but there was evidence on the part of the plaintiff, tending to prove an offer to pay the $14, by Hartshorn, some time after the payment of the $60; but he did not state whether before the expiration of the time to redeem or not, and a like offer by the plaintiff at the time of paying the savings bank debt: namely, March 14, 1857. On the other hand, the defendants' evidence tended to disprove any such offer to pay, except an offer after the expiration of the year, accompanied with a condition that the creditors should convey their interest by a deed, instead of giving a discharge, which they expressed a willingness to give.

The court charged the jury, for the purposes of this case, that under the circumstances stated, the plaintiff had such an interest, legal or equitable, in the land, that on payment of the mortgage debt the law would, for her protection, and for the purposes of justice, treat the mortgage as assigned to her, whether there was an actual purchase or not; to which the defendants excepted.

Upon the question, whether there was an actual assignment of the mortgage, there was evidence tending to show that the land was heavily encumbered by the subsequent mortgage to the Indian Head Bank; that the plaintiff paid her own money to the savings bank; and she also testified that she paid her money, not to take up the mortgage for the benefit of Hartshorn and Ames, but to take the place of the savings bank, and supposed she was getting a transfer; and she further testified that at the same time she offered to pay the aforesaid $14 to Mr. Hughes, who was also the treasurer of the savings bank, and as such received the $1,015, before mentioned; and that said Hughes declined to receive said $14, but gave her a receipt for the $1,015, dated March 11, 1859, as follows: "Received of Harriet Moore one thousand and fifteen dollars, in full for amount due on execution recovered by Nashua Savings Bank against Hartshorn & Ames, February term, 1858, it being on a mortgage by Hartshorn & Ames to said bank, December 12, 1855, for one thousand dollars," and signed "A. P. Hughes, Treasurer."

Said Hughes testified that he previously had talk with Mr. Stevens, her attorney, about it, but who was to pay it, or how, he could not say, but he does not think any agreement was made to assign; does not recollect definitely — no remembrance of consulting trustees, and if he had he presumed there would have been some entry of it, as he had no authority without.

It appeared that, before the payment by the plaintiff of the savings bank debt, a judgment had been obtained by it in a suit on that mortgage, a writ of possession issued, and executed, for the purpose of foreclosing the right of redemption.

Mr. Stevens, with whom Mr. Hughes had a conversation, as before stated, was counsel for the plaintiff, and did not testify.

The plaintiff introduced in evidence the deed of S. M. Minasian to Hartshorn & Ames, dated October 26, 1857, re-conveying the land in question.

The defendants contended that there was no evidence of a purchase or assignment of the mortgage debt, but the court ruled otherwise, and left it that the jury find whether there was such a purchase; and in answer to a question in writing, the jury, in addition to a general verdict for the plaintiff, found specially that there was such a purchase, and this question and answer was read at the hearing.

The jury having returned a verdict for the plaintiff, the defendants moved for a new trial.

*Sawyer & Stevens*, for the plaintiff.

*Morrison & Nutt*, for the defendants.

XLIV.     15

NESMITH, J. The plaintiff's claim to the hay in dispute must depend upon the validity of her title in the land where it was produced. We propose to examine briefly one or two of the principal exceptions raised by the defendants to the plaintiff's title.

1. It is alleged that the plaintiff had no legal right to redeem the mortgage made to the savings bank by Hartshorn & Ames, or, in other words, she had no interest to protect in this estate, so as to justify her proceedings. The general doctrine on this point is well stated by *Washburn,* (1 Real Prop. 553.) "Every person may exercise the right of redemption, who is interested in the mortgaged estate, or any part of it, having a legal estate therein, or a legal or equitable lien thereon, provided he comes in as privy in estate with the mortgagor. Among those who may redeem, are heirs, devisees, executors, administrators and assignees of the mortgagor, subsequent incumbrancers, judgment creditors, one having an easement in the land, &c. The owner of any interest, or fractional part, however small, of the mortgaged premises, may redeem it." The plaintiff sets up her claim here as a privy in estate, being invested by virtue of the conveyances to her as assignee of the mortgagors, (1) under the quitclaim deed to her under the date of March 11, 1857; (2) by virtue of the re-conveyance of the same estate to Hartshorn & Ames, from S. M. Minasian, dated October 26, 1857. Admitting that the plaintiff's grantor's title may have been defective on the 11th of March, there appears to be no doubt that it was confirmed and ratified by the subsequent conveyance of October 26, 1857. Confirmation and effect is thus given to the previous deed of the parties, by virtue of the power acquired under the second conveyance. There does not appear to have been any change in the mean time, any new rights acquired by others in the estate, or any rights injuriously affected; certainly nothing was done of which the defendants can justly complain. The law regards with favor all facilities given to prevent the forfeiture of mortgaged estates. All contracts made to lessen or embarrass the right of redemption are regarded with jealousy. *Holudge* v. *Gillespie,* 2 Johns. Ch. 34. Hence, we think, that, so far as these defendants are concerned, the plaintiff had acquired such a legal interest in the premises as she might protect and fortify by the payment of her money to redeem the premises.

Redemption will be decreed according to the priority of the claimants. If there are several mortgages the court will decree in detail that the second shall redeem the first, the third the second, and so on. 1 Hill. on Mortgages 93, sec. 62. The Indian Head Bank may have had a right to redeem in this case, paramount to that of the plaintiff; but that question is not presented here, as the bank does not interfere with the plaintiff. The instructions of the court to the jury were correct. It is manifest that the plaintiff, by the payment of her money, could not have intended any thing short of an assignment of the mortgage debt to herself, having paid it in full. She could not have intended the payment should operate as a discharge of the mortgage, thereby throwing away entirely and for ever her funds. It was held in *Forbush* v. *Goodwin,* 25 N. H. 425, that nothing more is necessary to discharge the interest of a mort-

gagee, and revest the estate fully in the mortgagor, than the payment of the debt, or the performance of the duty, the payment or performance of which the deed was intended to secure. A third person, discharging a bond and mortgage for his own safety, may be substituted in the place of the obligor or mortgagor, and retain the bond and mortgage. *John G. Coster's Case*, 2 Johns. Ch. 504. In equity, the party entitled to an assignment of a mortgage may be regarded as subrogated to the rights of a mortgagee without the assignment of the deed of mortgage. *Aiken* v. *Gale*, 37 N. H. 505; *Jenness* v. *Robinson*, 10 N. H. 219; *Parkman* v. *Welsh*, 19 Pick. And this right of subrogation, though originally a doctrine of equity, has become recognized as a legal right. 1 Wash. Real Prop. 575; *LaFarge* v. *Hester*, 11 Barb. 159. There are numerous other authorities that hold that the payment of a debt secured by a mortgage may operate either as a discharge of the mortgage, or as an assignment, as may best subserve the purposes of justice. *Hastings* v. *Stevens*, 29 N. H. 573; *Hatch* v. *Kimball*, 7 Shep. 9, and numerous authorities cited by both sides. Nor can there be any doubt about the power of the treasurer of the savings bank to receive payment of a note, and to surrender it to the payee, with the mortgage that secures it. Such a power is incident to his office, and is necessary to the just discharge of its duties. Cases will arise where the special votes of directors may become necessary to clothe the treasurer with necessary powers to render his conveyance valid, but that does not appear necessary here. The payment made by Hartshorn to Mr. Hughes, of the $60, being in part of the amount due on the sale of the equity of redemption on the execution in favor of G. & S. McQuesten against Hartshorn & Ames, under the further agreement that when the other sum of $14 was paid a full discharge of the execution should be given, including costs, and sale of the equity, should be so construed as to work no forfeiture of the plaintiff's estate, or injury to the purchasers of the equity. The payment of the $60 may equitably operate to assign the interests which the McQuestens had in the land, to that extent, and under the agreement made with them they may rightfully hold the estate, or equity of redemption, in trust for said Hartshorn or his assignee, subject to the payment of the $14 and interest thereon. *Page* v. *Pierce*, 26 N. H. 317. As the plaintiff has been ready to pay this balance, and as it has now been brought into court, the party will not suffer by this arrangement.

The receipt of a part of the debt due has been held to be a waiver of the foreclosure, and we think the same rule should be established here. *Deming* v. *Cummings*, 11 N. H. 483; *McNeil* v. *Call*, 19 N. H. 403.

It seems to us that to hold that a forfeiture of the estate was created by the non-payment of the $14, under the circumstances shown here, would be doing manifest violence to the fair intent and meaning of the contract itself, as well as to the rights of the plaintiff. The rule proposed by the court secures to the McQuestens their money paid out, and the interest thereon, which appears to be what their attorney intended to stipulate for. Had the receipt or contract

made certain the precise time when the $14 was to have been paid, then all doubt would have been removed. With these views upon the facts of the case, we think there should be

*Judgment on the verdict.*