Scott, J.
There are two distinct and firmly-established rights of sureties, which are involved in the consideration of *203 this case. First, that of substitution or subrogation, through which a surety paying off the debt of his principal is entitled to stand in the place of the creditor, and have all the rights which he has, for the purpose of reimbursement. A statement of this right was made in clear and forcible terms by the Chancellor (Lord Brougham), in Hodgson v. Shaw, 3 My. & K. 183, where it was said: “It is hardly possible to put this right of substitution too high, and the right results more from equity than from contract or quasi contract; unless in so far as the known equity may be supposed to be imported into any transaction, and so raise a contract by implication.”
The doctrine of the court in this respect was luminously expounded in the argument of Sir Samuel Romilly, in Craythorne v. Swinburne (14 Vesey, 160); and Lord Eldon in giving judgment in that case sanctioned the exposition by his full approval. “‘A surety,’ to use the language of Sir S. Romilly’s reply, ‘ well be entitled to every remedy which the creditor has, against the principal debtor, to enforce every security and all means of payment; to stand in the place of the creditor, not only through the medium of' contract,, but even by means of securities entered into without the knowledge of the surety; having a right to have those securities transferred to him, though there was no stipulation for that; and to avail himself of all those securities against the debtor.’”
The other right to which we have referred, is- that of contribution, which arises in the case of co-sureties, and which each may claim as against the others who are bound with him in a common liability. Whenever several sureties stand in the relation to each other of co-sureties, by being bound for the same person,'and for the same debt or engagement, so that they have a common interest, or a common burden to bear, if one of them be compelled to bear the whole or a part of the burden alone, he may call upon his co-sureties to equalize the burden by contribution. This is a right arising also from equity, rather than from contract (except in so far as its universal recognition may make it an implied stipulation), and *204 rests upon this ground, that where the parties stand in equáli jure, equity which delights in equality, will require that the discharge from the common obligation which enures to the equal benefit of all, shall be obtained at their equal expense. Qui sentit commodum, sentire debet et onus. Craythorne v. Swinburne, 14 Vesey, 160; Deering v. Winchelsea, 2 Bos. & P. 270.
In the case before us, two bonds, or undertakings, were executed by the debtor, with a surety or sureties in each. First, the undertaking for the discharge of the attachment, in which Smith, the plaintiff below, was the sole surety; and this was conditioned for the debtor’s performance of the judgment to.be rendered by the court in the action then pending. Judgment was subsequently rendered against the debtor, and the liability of the surety, Smith, thereby became fixed, unless that judgment could be set aside or reversed. With a view to its reversal, the debtor filed a petition in error in the proper court; and in order to stay execution, entered into a supersedeas bond or undertaking, conditioned for his payment of the condemnation money and costs, in case the judgment should be affirmed upon error. This latter bond was executed by both the parties in the present controversy, as sureties. And the surety, Smith, having been compelled, by means of a suit upon the second bond, to satisfy the creditor, now seeks to enforce against Hartwell, as a co-surety, his supposed obligation to make contribution. Hartwell resists this claim, on the ground that as between the two bonds, the sureties in the latter have a right, in case payment is enforced from them, to assert, on the principle of subrogation, all the rights of the creditor against the surety in the first bond. And as Smith himself is such sole surety, and therefore, ultimately liable to indemnify Hartwell, equity will not require the latter to make contribution.
In regard to this question of superiority of equities, which is liable to arise in the case of prior and subsequent bonds, executed by different sureties, for distinct purposes, and both constituting securities in the hands of the creditor for the *205 same debt, it is well settled that if tbe interposition of tbe second surety, is for the benefit of the principal alone, without the sanction or assent of the first surety, who may be prejudiced thereby; as when the effect of the second bond is to prevent the enforcement of present payment from the principal, and thus to prolong the responsibility of the first surety; in such a case the equity of the first surety is superior, and he is entitled to be subrogated to the rights of the creditor as against the second. Parsons & Cole v. Briddock, 2 Vern. 608; Pott v. Nathans, 1 Watts & Serg. 155; Burns v. Huntington Bk., 1 Penn. R. 395; Brandenburg v. Flynn’s Adm’r., 12 B. Monroe, 397; Dunlap v. Foster, 7 Ala. R. 734 (N. S).
And this doctrine seems to be entirely equitable, .for it is but reasonable that the benefit intended for the principal alone, by the second surety, should be conferred, if at all, at his own risk, and not at the risk or to the prejudice of other parties whose wishes were not consulted in the transaction.
But the rule is otherwise, where the surety in the second bond becomes bound for a purpose in which both the principal and the prior surety concur, in which they both have an interest, and where the assent of the prior surety is expressly given, or is clearly to be inferred from the circumstances of the case. In such a case the last surety has a right to look for his indemnity, not only to his principal, but to such fixed securities as had been given to the creditor, when his engagement was entered into, and on the faith of which he may be presumed to have incurred his obligation. Howe v. Frazier, 2 Robinson La. 424, and authorities cited supra.
It is settled law that if a creditor, by valid contract with his principal debtor, without the consent of the surety, extend the time of payment, by thus tying up his own hands, and suspending his right of action, on the original contract, against the principal, he discharges the surety. But if the contract for extending the time be made with the assent of the surety, his liability remains unaffected. Upon a principle quite analagous to this, do the conflicting equities of prior and subsequent sureties, in cases like the present, depend. If, with *206 out the consent of the first surety, the creditor is arrested in the collection of his debt from the principal, by the interposition of a second surety, the former will be allowed, for his indemnity, to be subrogated to the rights of the creditor against the latter. But this equitable right can have no place, where the first surety assents to the second contract of suretyship; and especially where it is entered into at his instance, or for his benefit. His unqualified assent and concurrence leaves his prior liability in full force, as between the two sureties, and entitles the latter to the full right of substitution as against him.
Applying this rule to the facts of the present case, as clearly shown by the testimony of Smith himself, the court below erred in rendering judgment in his favor. By the execution of the first bond, Smith procured for his principal the discharge of the order of attachment. The creditor was thus prevented from securing his claim by a levy upon his debtor’s property; the bond of Smith being substituted for such security. By the subsequent judgment against the debtor this security became fixed. It was for the interest of Smith, as well as for that of his principal that this judgment should be reversed. A petition in error was accordingly filed by the judgment debtor, and Smith united with him in executing an undertaking in order to stay execution. This undertaking the clerk declined to accept, without further security. The debtor thereupon proposed to procure an additional surety, and to this Smith, readily, and unconditionally assented; not for the purpose of dividing his responsibility, but because the desired stay of execution could not otherwise be obtained. Hartwell, who had no interest in the matter, and was hitherto a stranger to the whole transaction, was accordingly procured as additional security. Under this state of facts, I think it might properly be said that Hartwell became a surety at the request of Smith as well as of the debtor; and that, in respect to him, they were both principals, and he surety. Hunt v. Chambliss, 7 Sm. & Marsh. 532; Cowan v. Duncan, Meigs R. (Ten.) 470.
But it is enough to say that the supersedeas bond was *207 executed with the express consent of the prior surety, unmistakably evidenced by his being a party to it; and that he can not therefore claim for it the effect of modifying his liability which had been previously fixed. We think it clear that had the debt been collected by the creditor from Hartwell, he should be subrogated to the creditor’s rights under the attachment bond, and that Smith can not therefore call upon him for contribution.
It is claimed in argument that the attachment bond in this case is invalid, because taken by the sheriff before a levy upon property, and therefore unauthorized. But a reference to sections 212 and 213 of the code will show that this point can not be maintained. Those sections provide a mode for the discharge, not merely of property actually levied upon, but of the attachment itself; and this may be effected, at any time, before judgment, by a proper 'undertaking which, in vacation, and while the order of attachment remains unreturned in the hands of. the sheriff, may be executed in the presence of that officer.
Judgment reversed, and cause remanded.
Brinkerhoee, C.J., and White, and Welch, JJ., concurred.