## HARRISON, ET AL. EX PARTE.

1. An order of the Orphans' Court requiring the shares of several distributees, in the slaves of an *intestate's* estate to be set apart and allotted to them pursuant to their petition—appointing commissioners to make distribution accordingly— and directing *further*, that the administrator should produce the slaves required by the commissioners, and afford all necessary facilities for making the division, is such a final order within the statute, as may be revised by writ of error.

THE petitioners represent that they are entitled to five-eighths of the personal estate of R. B. Harrison, deceased, and that the

remainder belongs to Kirkland Harrison, the administrator, James Harrison, and the representatives of Mary Moores, deceased. That it appears from the inventory returned by the administrator, to the Orphans' Court of Dallas, and other evidence, that the estate consisted of about one hundred and eighty slaves, besides other personal assets, amounting to thirty or forty thousand dollars, &c.

The petitioners had heretofore united with James Harrison, Charles Moores, and Mary, (the wife of the latter, since deceased,) in a bill in Chancery, and obtained an injunction to restrain the administrator from selling the slaves belonging to the intestate's estate, as he proposed to do, in January, 1844, under an order of the Orphans' Court. This injunction still continues in force.

It is also stated that the petitioners united in an application for the distribution of the slaves, horses and mules of intestate's estate. The distribution was opposed by the administrator, although more than eighteen months had elapsed from the grant of administration, upon the ground of the previous order of the Orphans' Court to sell the slaves, the pendency of the injunction, &c. In compliance with the application for a distribution, the Orphans' Court, in December, 1844, ordered that the slaves only be distributed, so as to allot to the petitioners their respective shares thereof, the remainder of the slaves to continue in the hands of the administrator, until the other distributees should ask their portions to be set apart. It was further declared, that a paper set up by the administrator as a will of the intestate, is illegal on its face, and consequently was null and void. The commissioners appointed to carry into effect the order of the Orphans' Court, were required to report their proceedings under the same, to that Court, on the first Monday in January, 1845. It was also provided by the order, that the proportion of each distributee should be particularly defined; that the administrator should produce the slaves when required by the commissioners, and afford them all necessary facilities for making the division. Of this order notice was given to the administrator and commissioners, but not sufficiently early to enable them to execute it, and make report, as required.

On the sixth day of January, 1845, the Orphans' Court, at

93

the instance of the petitioners, renewed the previous order of distribution, so as to give further time for its execution; and on that day the administrator sued out a writ of error, returnable to the term of this Court, to be holden in June next, and having executed a bond, with sureties, in the sum of $10,000, a *supersedeas* has been issued, to suspend all proceedings upon the order of distribution.

To sustain the facts above stated, the petitioners refer to a transcript of the record of the proceedings in the Orphans' Court, which accompanies their petition, and pray that a *mandamus*, or other appropriate process, issue to the clerk of the Orphans' Court, directing him to disregard the writ of error and *supersedeas*, and issue a citation to the administrator and commissioners, that the order of distribution may be executed.

R. Saffold, for the petitioners, insisted, that the order of the Orphans' Court was merely interlocutory, and a writ of error would not lie thereon. [Russell and others v. Pierce, 7 Porter's Rep. 276; Merrill v. Jones, 8 Id. 554; Miller v. Goffe and others, 9 Id. 265; Jones, ex parte, 1 Ala. Rep. N. S. 15; Wade v. Judge, 5 Id. 131; Ex parte, Sanford, Id. 562.] *Further*, a *mandamus* is the proper remedy. [Ethridge v. Hall, 7 Porter's Rep. 47; McRea v. Bank of Columbus, 1 Ala. Rep. N. S. 578; Ex parte, Rodgers, 7 Cow. Rep. 526; Walden v. Lee, 5 Pick. Rep. 323.]

C. G. Edwards, contra, contended, that as it respected the slaves of the intestate's estate, or, rather, the petitioners' shares, the order of the Orphans' Court was final. He cited Clay's Dig. 297, § 4, 307, § 6; 9 Porter's Rep. 111; 3 Ala. Rep. 156, 434.

COLLIER, C. J.—It is provided by statute, that from any judgment, or order final of the Orphans' Court, whether in vacation or term time, an appeal or writ of error, shall lie to the Circuit or Supreme Court, in the same manner as upon judgments of the Circuit Courts. [Clay's Dig. 297, § 4.] The important inquiry in the present case is, whether the order of the Orphans' Court is final, within the meaning of the act cited.

The case of Merrill v. Jones, 8 Porter's Rep. 554, is supposed by the petitioners' counsel, to be similar to the one before

us. There, it was alledged, that the administrator had not made a true inventory of the intestate's estate, but had omitted to return several negroes, &c., and that the negroes had been carried away from the premises of the deceased by him. The administrator affirmed that the negroes were not the property of the estate, and a jury were impanneled to try the issue, who found that they were subject to distribution. Thereupon the Court ordered the administrator, to distribute the slaves among the distributees. This Court held, that the decree of the Orphans' Court merely directed the administrator to proceed to make distribution according to the statute, of the slaves ascertained to belong to the estate. "Whatever may be the merits or demerits of these proceedings, the decree is not a final settlement of the estate; no distribution was actually made, nor was there a decree ascertaining how much is due to each distributee, or to the defendant in error as the sole distributee."

The decree in that case merely directs the administrator to distribute the slaves, that is, to proceed in the performance of this duty as the statute directs. Some further proceeding was necessary, to ascertain, and recognize the distributees, to adjust their respective proportions, to appoint the commissioners to distribute, &c. But in the case at bar, all this was determined and settled by the order, and the shares of the petitioners were merely to be particularized by the commissioners, and the slaves set apart to each, delivered. This, by analogy to a decree in Chancery, is *pro re nata*, definitive of the rights of the parties. In Weatherford, et al. v. James, 2 Ala. Rep. 170, we say, that a decree is final which settles the rights of the parties in litigation, although it contain a reference to the master, to take an account and report what is due to the complainant. This conclusion has been repeatedly reaffirmed by us, and seems to be well supported by authority.

To make the order final, it is not necessary that all the distributees should have united in the application to the Orphans' Court; each distributee may proceed separately, and obtain a final decree in his favor. This is authorized by statute in a proper case.

Having determined that the order is final, the right of the administrator to sue out a writ of error follows as a consequence. The question then, as to the right of the distributees

to an allotment of their shares, eighteen months having elapsed since the grant of administration, need not now be considered. But we would remark, that in Leavens v. Butler, et ux. 8 Porter's Rep. 380, we held, that a legatee cannot, in all cases, immediately after the expiration of that time, coerce the payment of his legacy. Whether the law is the same in respect to a distributive share, we will not inquire.

It results from what has been said, that the prayer of the petitioners must be denied.