Wheeler, C. J.
—It is a just and salutary principle, which has been acted on by courts of equity, that a surety who pays the debt due. by his principal to his creditor shall have the benefit of the securities for the debt placed in the power of the creditor by the principal. This equitable doctrine was fully recognized by this court in the case of Sublett v. McKinney, 19 Tex., 438. “It seems *185 right (it was said by the Supreme Court of Pennsylvania in Pott v.' Nations, 1 Watts & Serg., 155, 157) that the creditor should transfer the means of indemnification, for which he has no longer occasion, to him who, under a legal obligation to pay in default of. the principal debtor, has released these securities from the demand of the creditor, and paid the debt for which they were furnished. Where, however, such means consist of the responsibility of an individual becoming a later surety or guaranty for the same debt of the principal, there • arises a conflict of equities, which may give rise to new questions as to the priority between the former and latter surety: such latter surety stipulating, at the instance of the principal, to pay the debt, suffers no absolute injustice in being obliged to do so, since he is compelled to perform no more than he undertook, and has no right to complain that .he is not allowed to use, as a payment by himself, the money which proceeds from another person, whom- his principal was previously bound to save harmless. How the equity would be in a naked case of this Mnd, I .give no opinion; it is sufficient • that it is settled, that if the interposition of the second surety may have been the means of involving the first in the ultimate liability to pay, the equity of the first surety decidedly preponderates.” Applying this principle to the case, then, before the court, where, after judgments were obtained against a principal and surety, a third person interposed and gave his note for the debt to obtain a stay of execution for the principal, and the surety was afterwards obliged to pay the debt, it was held that he was entitled to have an assignment of the judgment on the note of the third person to indemnify him for such payment.
The same principle was acted on by that court in the case of Burns v. The Huntingdon Bank. (1 Penn. It., 395.) A judgment was obtained against the maker of a promissory note, who afterwards entered absolute security *186 under an act of the legislature in order to obtain a stay of execution. After the expiration of the time stipulated in the stay of execution, judgment was obtained against the surety; and it was held, that one of two indorsers who paid the note, (who in point of law was but a surety) was entitled to an assignment of the judgment against the surety.
The principle appears to have been first applied to such a ease in England, in Parsons v. Briddock, 2 Vern., 608, which was approved by Sir Wm. Grant, Master of the Polls, in Wright v. Morley, 11 Ves., 22. There, where the principal in a bond had been sued and gave bail, and judgment was obtained against the principal and also against the bail1 by the creditor, and afterwards the sureties on the original bonds were compelled to pay, and then brought their bill in equity to have the benefit of the judgment of the creditor against the bail by having it assigned to them, it was held that they were entitled to an assignment of the judgment against the bail, and it was decreed accordingly. “ So that (says Sir Wm. Grant) though the bail were themselves but sureties, as between them and the principal debtor, yet, coming in the room of the principal debtor as to the creditor, it was held that they likewise came in the room of the principal debtor as to the surety. Consequently, that decision established that the surety had precisely the same right that the creditor had, and was to stand in his place.” (Ib.) The authority of this decision is supposed to have been shaken in England by some of the more recent decisions; but it appears to have .maintained its authority in this country; and Judge Story, while he supposes it to have been much shaken in point of authority, appears to approve of its equity and justice. (1 Story’s Eq., § 499, a, et seq.) It was approved by Chief Justice Gibson, and adopted and acted on by the Supreme Court of Pennsylvania in Burns v. The Bank, (before cited;) was approved by President Tucker in Langford v. Perrin, 5 Leigh, 557; and appears to have been received *187 with approbation and recognized as sound in principle generally by the American courts. (1 Barr., 512; 11 Leigh, 309; 5 Id., 557; 6 Paige, 32, 254; 1 John.’s Ch. R.,413; 1 Story’s Eq., § 499, b, n, 2, 7th ed.) It was fully adopted and acted on by this court in the case of Sublett v. McKinney, 19 Tex., 438, and must be held to be decisive of the present case. The case of Parsons v. Briddock, and the other cases cited from the Pennsylvania reports, are in point, and fully maintain the right of the plaintiff in this case to indemnity from the defendants, on the principle of the right of the surety who steps into the place of the principal and pays his debt to come in the place of the creditor in turn, and be subrogated to all the means of indemnity in the hands or under the control of the creditor. And the doctrine seems reasonable and-just in its application to the present case. For, as was suggested in Pott v. Rations, the later sureties upon the writ-of-error bond suffer no absolute injustice in being obliged to comply with their undertaking, and cannot complain that they are not allowed to use as a payment by themselves the money which has proceeded from the original surety, whom their principal was previously bound to save harmless. But for their interposition the plaintiff may have been exonerated from his liability. The principal may then have had visible property subject to execution, of which, but for the interposition of the defendants to supersede the judgment and prevent execution thereof, the plaintiff might have availed himself to have satisfaction of the judgment. And “it is sufficient that it is settled, that if the interposition of the second surety may have been the means of involving the first in ultimate liability to pay, the equity of the first surety decidedly preponderates.” (Ib.‘ 1 Watts & Serg., 157.) That is the present case. We are therefore of opinion that the court erred in sustaining the demurrer to the petition; for which the judgment must be
Reversed and the cause remanded.