FIDELITY & DEPOSIT COMPANY OF MARYLAND v. JOSEPHINE M. BOWEN, CAROLINE F. NYERE, H. G. OFFENBACKER AND JACOB GERBER, Appellants.

**Attachment: RELEASE BOND: WAIVER OF APPROVAL.** The plaintiff in attachment may waive the approval of a release bond as provided in Code Section 3907, and the liability of the sureties will not be affected thereby.

**Release Bond: CONSIDERATION.** The dissolution of an attachment is a sufficient consideration to support a bond for the release of attached property.

**Sureties: SUBROGATION.** Where an attachment has been dissolved by the execution of a release bond, and the defendant appeals from a judgment giving a supersedeas bond with other sureties and without the knowledge or assent of the sureties on the attachment bond, payment of the judgment on affirmance by a surety on the supersedeas bond will not entitle him to subrogation to the rights of the judgment creditor against the sureties on the attachment bond.

*Appeal from Linn District Court.*—HON. H. M. REMLEY, Judge.

TUESDAY, MARCH 15, 1904.

IN the fall of 1896 Josephine M. Bowen sued Caroline F. Nyere for damages, occasioned by the alienation of her husband's affections. The action was aided by attachment, allowed in the sum of $2,000, and levied upon certain prop-

erty. Thereupon she, with H. G. Offenbacker and Jacob Gerber as sureties, executed a bond for the performance of any judgment which might be obtained, not exceeding the extent of the levy, as authorized by section 2994 of the Code of 1873, and by stipulation of parties and the order of court the attached property was released. The trial ·occurred in April, 1897, and resulted in a judgment of $500 and costs against the defendant therein, but no judgment was entered against the sureties on the bond. Thereupon the defendant took an appeal to this court, and filed a supersedeas bond, stipulating also for the payment of the judgment if approved, with this plaintiff, Fidelity & Deposit Company of Maryland, as surety. The judgment was affirmed, and judgment entered on the supersedeas bond in the Supreme Court. Execution having issued, the plaintiff paid the judgment and all costs. In this action it prayed for judgment on the bond given by the defendant Gerber in the district court for the discharge of the attachment, and recovered. The defendant Gerber appeals.—*Reversed.*

*Heins & Heins* and *John D. Stewart* for appellant.

*Preston, Grimm & Moffit* and *Barney Gilbert* for appellee.

LADD, J.—The original suit of Mrs. Bowen against Mrs. Nyere for the alienation of her husband's affections was aided by a writ of attachment levied upon certain real estate.

1. RELEASE bond: waiver of approval.

To release the levy, the defendant Gerber and one Offenbacker, as securities, executed a bond conditioned as required by section 2994 of the Code of 1873. The parties, by their attorneys, stipulated that this bond be accepted as sufficient, and that the attached property be discharged from the levy, which was done. It is said that this acceptance by the parties cannot take the place of the approval provided for in the statute. The section referred to (section 3907, Code) reads: "If the defendant, at any time before judgment, causes a bond to be executed to

the plaintiff with sufficient sureties, to be approved by the officer having the attachment, or after the return thereof by the clerk, to the effect that he will perform the judgment of the court, the attachment shall be discharged and restitution made of the property taken or proceeds thereof. The execution of such bond shall be deemed an appearance of such defendant to the action." As the bond is for the protection of the plaintiff, the object of the approval must be to assure to him security equal in value to that which might have been obtained by the levy of the writ of attachment. Another purpose subserved is that by exacting specific approval mistakes in receiving bonds executed by persons of doubtful responsibility are thereby more likely to be avoided. It is a condition to the acceptance of the bond by the officer, however, without which, in the absence of a waiver, the attachment is not dissolved. Nor can the bond, without approval, be deemed statutory, whatever its efficacy as a commonlaw obligation. *Fogel v. Dussault,* 141 Mass. 154 (7 N. E. Rep. 17); *Dewey v. Kavanaugh,* 45 Neb. 233 (63 N. W. Rep. 396). But in passing upon the sufficiency of the bond, the officers, while bound to deal fairly with the party tendering it, act primarily in the interest of the plaintiff, and in no event for the sureties. To them no duty is due in determining whether they shall be admitted as parties to the record, for they become such upon the approval of the bond. *Barton v. Thompson,* 66 Iowa, 526. They have no ground for complaint if rejected, nor can one surety question the officer's discretion in approving another of doubtful or no financial responsibility. All exacted of the officer is that he pass on the sufficiency of the bond in its entirety. If the surety would guard the right of contribution in event of loss, he must see to that for himself. Were it otherwise, one surety, upon paying damages flowing from the breach of a bond, might compel contribution from the officer, instead of the other surety, in event of the latter's want of means when accepted. The object of the bond is the discharge of the attachment, and, if this be accomplished by its delivery, it is of no concern to the sureties that its sufficiency

has not been passed upon by the sheriff or clerk.   But the plaintiff, for whose protection the bond is executed, may waive the formal approval by these officers, and accept it as tendered under the statute, without invalidating its efficacy as a statutory release bond.   See *Battle v. Knapp,* 60 N. H. 361.

II.   It is next insisted that, as the property levied upon was not in Mrs. Nyere's name, there was no consideration for the execution of the bond.   This view overlooks the effect

2. RELEASE bond: consideration. of such a bond, which not only releases the levy, but dissolves the attachment itself.   *Dearborn v. Richardson,* 108 Mass. 565; *Hartwell v. Smith,* 15 Ohio St. 200.   The dissolution of the attachment alone is a sufficient consideration.

III.   There is another obstacle, however, in the way of plaintiff's recovery in this action.   The appeal was taken by Mrs. Nyere, and the supersedeas bond executed by her with

3. SURETIES: subrogation. the plaintiff as surety, without the knowledge or consent of Gerber as surety on the release bond.   Undoubtedly a surety, upon the payment of his principal's debt, is ordinarily entitled to be subrogated to the rights of the creditor to all the securities held by him.   But this right of necessity depends upon the superiority of his equities.   Indeed, subrogation, which is defined as the "substitution of another person in place of the creditor to whose rights he succeeds in relation to the debt," is, as was said in *Richards v. Cowles,* 105 Iowa, 738, "an equitable result purely, and depends on facts to develop its necessity that justice may be done."   This principle has been uniformly applied in determining the liabilities of sureties on successive bonds for the satisfaction of the same debt to each other. That the surety on one bond has paid the debt does not alone entitle him to step into the creditor's shoes and recover what he has expended from bondsmen on another obligation.   To entitle him to do so, his equities must appear to be superior to those of the sureties on the other bond.   If the execution of one bond has worked no detriment to the sureties on an-

other, and all are alike obligated to pay precisely the same debt, there is no basis for the subrogation of any of the creditor's rights against others. In such a case the most that can be said is that the equities are equal—a condition of things essential to contribution, but fatal to subrogation. In discussing the question, but not deciding it, the court, in *Pott v. Nathans,* 1 Watt & Sergeant Pa. 155 (37 Am. Dec. 456) said: "Where, however, such means consist of the responsibility of an individual becoming a later surety or guaranty of the same debt of the principal, there arises a conflict of equities which may give rise to new questions between the former and latter surety. Such latter surety, stipulating at the instance of the principal to pay the debt, suffers no absolute injustice in being obliged to do so, since he is compelled to perform no more than he undertook, and has no right to complain that he was not allowed to use as a payment by himself the money which proceeds from another person whom his principal was previously bound to save harmless." There the second bond operated to stay an execution levied against real estate, and this was held to be detrimental to the first surety, and therefore to entitle him to subrogation upon the payment of the judgment to the rights of the creditor in the stay bond. But for the interposition of the second surety the judgment might have been enforced against the real estate. The discharge of a levy, however, does not appear essential in order to preponderate the equities in favor of the first surety. It is enough, according to some authoities, if the effect of the second bond is to tie the hands of the first surety and creditor, so as to interfere with or delay the collection of the debt. Thus, in *Burns et al. v. Huntington,* 1 Penn. & W. 395, a surety on a note upon the payment of the judgment rendered thereon was held entitled to be substituted to the right of the creditor to recover on a bond given to stay execution one year, on the ground, as stated by Gobson, C. J., that "they interposed to procure a personal advantage to the principal and to the detriment of the surety, who might perhaps be exonerated had the proceedings not been stayed against the

principal." This decision was followed in *Mitchell v. De Witt*, 25 Tex. Supp. 180 (78 Am. Dec. 561), where the surety on a note, who paid the judgment subsequently rendered, was allowed to recover on the supersedeas bond, a writ of error having been sued out. The court said: "The latter sureties upon the writ of error bond suffer no absolute injustice in being obliged to comply with their undertaking, and cannot complain that they are not allowed to use as a payment by themselves the money which proceeded from the original surety, whom their principal was previously bound to save harmless. But for the interposition, the plaintiff might have been exonerated from liability. The principal may have had visible property subject to execution of which, but for the interposition of defendants to supersede the judgment and prevent execution thereof, the plaintiff might have availed himself to have satisfaction of the judgment." The parties were transposed in *Chaffin v. Campbell*, 4 Sneed, 184, the surety on the stay bond who had paid the judgment bringing the action against the original sureties. In denying liability the court said: "There is not an intimation in the record that either of the original sureties knew of or joined in such request (that the surety signed the stay bond), or afterward assented to it. The payment by the plaintiff therefore was as the surety of the principal debtor alone. For him alone he was surety, and not for the original sureties; and as to the defendant's testator (one of original sureties) the payment was voluntary, and officious, and out of which no action can arise. Upon the facts of this case it might with much more plausibility be asserted that plaintiff, as stayer of the execution on the judgment, would have been liable to defendant's testator in case the latter had been compelled to pay the debt, upon the principle that one who becomes surety in the course of legal proceedings against the principal has no right of contribution against the surety for the debt, but, on the contrary, the latter is entitled to be subrogated to the creditor's right against him, as in case of bail." See, also, *Schnitzel's Appeal*, 49 Pa. 23.

As under our statutes the filing of the supersedeas bond operates solely as a stay of proceedings, it would seem that these decisions especially *Mitchell v. De Witt* and *Chaffin v. Campbell,* are directly in point. But appellee argues that the filing of the release bond operated to discharge property out of which the judgment rendered might have been enforced. The real estate attached was not in the name of Mrs. Nyere, as she had previously conveyed it fraudulently to Offenbacker, and, under the law as it then stood, the levy, without the aid of a writ of injunction, interposed no obstacle to the free disposition of the land by the grantee for value, and without notice. Moreover, the property remained in Offenbacker's name for nearly two years after the affirmance of this court, and hence was as available for the enforcement of the judgment as it would have been had the attachment not been dissolved. If it were to be conceded, however, that the execution of the bond did operate to release property, the case is not improved for the plaintiff. It can only rely upon the record as it stood when the supersedeas bond was given. At that time the only security was the bond of plaintiff to perform the judgment, and in balancing the equities between these parties it is immaterial how it came to be there. Its purpose was to dissolve the attachment; that of the supersedeas bond to stay execution. In both performance of the judgment was stipulated. The mere fact that one was executed subsequently to the other ought not to weigh in appellee's favor, unless it had the right to contract on the faith of the release bond. On what theory this might have been done, in the absence of any request on the part of the sureties on the latter, we are at a loss to understand. Certainly there is no privity of contract between them. As certainly the mere fact there was an outstanding promise to pay the debt of another cannot be treated as the consideration of a new, distinct, and independent contract also to pay it. But in *Howe v. Frazer,* 2 Rob. (La.) 424, the surety on the appeal bond, who had paid the judgment, was declared to be entitled to subrogation to the creditor's right to enforce a judgment he had also re-

covered on the bail bond. The reason for this conclusion was thus stated: "The principal's solvency was guarantied by the person who first bound himself for him.  *  *  *  The person who first binds himself gives credit to the principal, and would wrong him, who, under the faith of this, adds his responsibility, if the former declined to comply with his engagement to satisfy the debt if the principal does not." See, also, *Smith's Executors v. Anderson,* 18 Md. 520. *Dessar v. King,* 110 Ind. 69 (10 N. E. Rep. 621), is based on the construction of a statute, and is not in point. This would possibly be true where the second bond has been executed at the request of the surety on the first bond—a matter not disclosed in the opinion. If otherwise, and this reasoning were to be regarded as sound, the surety on the first note of an insolvent might be called upon to discharge all of his principal's subsequent obligations on the ground that credit had been extended on the faith of his confidence in the debtor's ability to pay.

As contended by appellee, the surety on the release bond was charged with notice that an appeal might be taken by Mrs. Nyere should judgment be rendered against her, and that such judgment might be stayed by the filing of a supersedeas bond. But this did not make him a party to any of the proceedings subsequent to the entry of the judgment he had promised to perform, and without his assent thereto there is no tenable ground for adjudging him bound thereby. A reversal would not necessarily have been to his advantage, for the second trial might have resulted in a larger judgment, and thereby increased the measure of his liability. He was not bound to take the risk incident to the delay of an appeal during which the judgment might be collected. That the debtor's property had been put beyond the reach of creditors might furnish a reason for not subrogating the surety on the release bond, upon payment, to the right of a creditor in an action on the supersedeas bond. But this at most would merely equalize the equities of the respective sureties. Ordinarily, the supersedeas bond, by tying the hands of the first surety and creditor, will prevent them from resorting to such means

of enforcing the judgment as would otherwise be available pending the appeal. When the supersedeas bond is executed at the request of the first surety, all objection to the extension of time is obviated, and the appeal is at his risk as well as the principal's. The supersedeas bond is then in the interest of both, and in event of payment by the surety thereon his right of subrogation as against the surety on the release bond cannot be doubted. *Dillon v. Scofield,* 11 Neb. 419 (9 N. W. Rep. 554); *Hartwell v. Smith,* 15 Ohio St. 200. In the latter case the distinction is perspicuously stated: "In regard to this question of superiority of equities, which is liable to arise in the case of prior and subsequent bonds execued by different sureties for distinct purposes, and both constituting securities in the hands of the creditor for the same debt, it is well settled that, if the interposition of the second surety is for the benefit of the principal alone, without the sanction or assent of the first surety, who may be prejudiced thereby—as when the effect of the second bond is to prevent the enforcement of present payment from the principal, and thus to prolong the responsibility of the first surety—in such a case the equity of the first surety is superior, and he is entitled to be subrogated to the rights of the creditor as against the second. And this doctrine seems to be entirely equitable, for it is but reasonable that the benefit intended for the principal alone by the second surety should be conferred, if at all, at his own risk, and not at the risk or to the prejudice of other parties, whose wishes were not consulted in the transaction. But the rule is otherwise where the surety in the second bond is for a purpose for which the prior surety is expressly given or is clearly to be inferred from the circumstances of the case. In such a case the last surety has a right to look for indemnity not only to his principal, but to such fixed securities as has been given to the creditor when the engagement was entered into, and on the faith of which he may have been presumed to have incurred his obligation." Another case somewhat in point is *Harrison et al., Ex parte,* 7 Ala. 736, where a judgment had been obtained against the

principal and sureties, and execution was caused to be levied against the principal's slaves, the sale of which was prevented by the execution of a bond by one Foster for the delivery on the day of sale. They were not forthcoming, and he was compelled to pay the debt, and recovery of the sureties was denied on the ground that the transactions were distinct. Unless the supersedeas bond is executed at the request of the sureties' on the release bond, they are distinct obligations with no connection by privity or otherwise. The judgment plaintiff had the right to resort to either for the satisfaction of his debt. *State v. McGlothlin,* 61 Iowa, 312. He chose to enforce the judgment against the plaintiff. Its payment discharged the debt as to defendant, for the reason that the bonds are independent obligations, and the record discloses nothing in principle or in the circumstances of the case entitling the plaintiff to superior equitable consideration as against this defendant.—REVERSED.