NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, APPELLANT, v. ROY O. MADDOX ET AL., RESPONDENTS.*

Kansas City Court of Appeals. June 10, 1929.

*Corpus Juris-Cyc. References: Bills and Notes, 8CJ, section 107, p. 71, n. 25; Fire Insurance, 26CJ, section 80, p. 82, n. 41; p. 83, n. 47; section 618, p. 455, n. 92; section 619, p. 457, n. 16; Subrogation, 37Cyc, p. 363, n. 1; p. 367, n. 11, 12.

*Hogsett & Boyle* for appellant.

*Meredith & Harwood* and *Paul R. Byrum* for respondent.

BARNETT, C.—This is a suit upon a promissory note. Defendant William H. Doerr bought an automobile and as a part of the purchase price executed his promissory note in the sum of $987.49, payable in installments and with interest. The note was made payable to R. O. Maddox and was secured by a mortgage on the automobile. Thereafter, Maddox sold the note to the Consolidated Bond and Security Company, a dealer in automobile purchase money notes secured by chattel mortgages on automobiles. The note was endorsed as follows: "Pay to the order of Consolidated Bond and Security Company. All payments are guaranteed by R. O. Maddox if not paid on due date, 16th of each month. R. O. Maddox."

The Consolidated Bond and Security Company had an open policy of insurance which had been issued by the plaintiff insurance company in which the name of the assured was given as "Kansas City Automobile Security Company and/or endorser of automobile purchase notes." This policy stated that the amount of the insurance was such amount as may be named in certificates issued hereunder; that the description of the automobile was "as per certificates." It is stated in the open policy that it covers the body, machinery and equipment of automobiles thereinafter described as evidenced by certificates issued under the open policy. It was provided that the assured would "declare for insurance under the policy every car financed by them upon which there is either a mortgage in-

terest or any indebtedness of any amount whatsoever due or to become due them as far as it shall be in their power to control this insurance;" that "all certificates are to insure only the interest of the insured in the automobile described thereunder, such interest being that of mortgage account of balance purchase price" and that the liability of the company should not exceed such interest at the time of any loss, but in no event should the company be liable for more than the amount specified upon the certificates issued thereunder.

It was provided that the violation of the terms and provisions of the policy by the purchaser of the car should "not waive the Kansas City Automobile Security Company's rights of recovery under the contract, but as regards any payment made under the stipulation they agree to subrogate to the National Fire Insurance Company of Hartford all their rights, with all securities held as collateral to such indebtedness;" that "in the event of any loss the company, upon payment of the same, should be subrogated to the extent of such payment to all rights of the assured to collect the balance of purchase money, if any, still due upon the automobiles insured thereunder."

This open policy dated March 10, 1920. The evidence shows that the Kansas City Automobile Security Company was the same company as Consolidated Bond and Security Company and a recitation to that effect was endorsed upon the policy. There was a rider upon the policy which provided that the insured would at all times during the life of the policy maintain a locking device upon the automobile and that insured would not leave the automobile without locking the device; that otherwise the policy should be null and void as far as the theft of the automobile was concerned. A policy was issued by the insurance company, dated June 16, 1920, by which the company insured W. H. Doerr to an amount not exceeding $1400 covering the automobile which Doerr had purchased from Maddox. It was provided that the insurance was subject to all the terms and conditions of the open policy and that loss, if any, should be adjusted with Doerr and payable to Kansas City Automobile Security Company on presentation and surrender of "this cover note." The automobile was lost by theft and the insurance company denied liability as to Doerr upon the ground that he had violated the terms of the locking device clause. Doerr brought suit and a final judgment was rendered in favor of the company.

The insurance company then paid the Kansas City Security Company the amount of the unpaid balance due upon the note, and at the time of payment the security company signed and delivered to the insurance company a receipt for the sum of $737.49, which recited that this was in full payment, compromise and settlement of all claims and demands against the company for loss or damage by

theft to the property described in the policy, and that in consideration thereof the security company assigned and transferred to the insurance company each and all claims and demands against any other person, persons, property or corporation arising from or connected with such loss and damage, and recited that the insurance company was thereby subrogated in the place of and to the claims and demands of the security company against said party, person, persons, property or corporation, to the extent of the amount above named, and that the insurance company was authorized and empowered to sue, compromise or settle to the extent of the money paid aforesaid. It was further recited that the security company surrendered its claim under the insurance policy and assigned and transferred its right and interest in all notes given by W. H. Doerr in payment of the automobile insured under the policy, and the note was endorsed by the security company without recourse.

Plaintiff then brought this suit upon the note against Doerr and Maddox, alleging that it was the holder of the note for value received. The defendant Doerr defaulted, but defendant Maddox filed an answer in which he alleged that the note had been paid and that there was no consideration paid for the note by the plaintiff. At the close of the evidence the court instructed the jury to find for the plaintiff, but afterward sustained a motion for new trial. From the order setting aside the judgment and granting Maddox a new trial plaintiff has appealed.

## OPINION.

In this case the plaintiff bases its right to recover upon the doctrine of subrogation. Defendant claims that there can be no right of subrogation because he is insured by the very policy under which plaintiff's right arises, and also because he is only secondarily liable upon the note. We do not think that Maddox was insured by the policy. It is true that the open policy contains this clause: "Assured: Kansas City Automobile Securities Company and/or endorsers of automobile purchase notes." The note is executed by Doerr payable to R. O. Maddox or order, and when Maddox sold the note he placed the following clause above his signature:

"Pay to the order of Consolidated Bond and Security Company. All payments are guaranteed by R. O. Maddox if not paid on due date, 16th day of each month."

This is a Missouri contract. Section 849, Revised Statutes 1919, reads as follows:

"A person placing his signature on an instrument otherwise than as maker, drawer or acceptor is deemed to be an endorser unless he clearly indicate by appropriate words his intention to be bound in some other capacity."

A surety undertakes to pay if the debtor does not; an indorser undertakes to do the same thing after due notice of dishonor, while a guarantor undertakes to pay if the debtor cannot. The material difference between guaranty and endorsement of a note is as to the extent of liability when measured by the diligence due from the creditor in order to charge the guarantor or indorser. [Sykes v. Everett, 169 N. C. 600, 83 S. E. 585; Callcot v. Carpenter, 132 S. W. 891.] Since Maddox clearly indicated by appropriate words his intention to be bound in some other capacity than that of an endorser, he cannot be held to be an endorser within the strict meaning of the statute. Nevertheless, we would not feel bound by a strict construction of the statute if there was anything about the language of the policy or the situation of the parties which manifested an intent to insure Maddox; but the situation of the parties fortifies the conclusion that he was not an endorser who was insured. The contract was between the insurance company and the security company. The open policy was issued before Doerr became an insured and at a time when it was not certain that Doerr would ever receive a policy of insurance or that Maddox would be secondarily liable upon any note. The rule that the language of a contract must be strictly construed against him who adopted the language will operate in favor of the security company and all others for whose benefit the policy was taken; but third parties, not parties to the contract, are not entitled to a strict construction in determining whether or not the contract was made for their benefit. The security company might desire to exercise its right to sell the note. The purchaser had a right in turn to further negotiate it. Whoever bought the note would *ipso facto* become the owner of the mortgage, which fact greatly lessened the chance that the holder of the note might call upon the security company for payment of the note by reason of its endorsement. The reason why the security company might wish to insure the property even after it had parted with its mortgage is obvious. It desired the mortgage to secure it against liability as endorser if it should sell the note. It no doubt further desired to protect the sale value of the note by extending the protection of the insurance to all further endorsers. But the security company had no reason to protect Maddox. If Maddox should be called upon to pay he might look to Doerr for exoneration, but as against the security company he had no rights. We see nothing in the situation of the parties nor in the manifest purpose of the policy to justify a departure from the literal meaning of the statute in determining whether or not Maddox was an endorser who was insured by the contract.

We are of the opinion that the insurance company is not subrogated to the rights of the security company as against Maddox. Appellant contends that when one secondarily liable pays the debt

he thereby becomes subrogated to all the rights of the creditor, including the right to all securities held by the creditor. Many decisions have employed such general language, but that was in cases where the surety or guarantor who had paid the debt was seeking to hold the debtor who was primarily liable. They are cases where the suit was brought against the principal upon the note or other obligation or against a wrongdoer whose tort had resulted in the damage or destruction of the property which had been mortgaged or pledged to secure the debt. The real doctrine is that if one secondarily liable pays a debt, he is entitled *as against the debtor who is primarily liable* to be subrogated to the creditor's rights. [Plate Glass Underwriters Mut. Ins. Co. v. Realty Co., 219 Mo. App. 186, l. c. 194; Loewenstein v. Insurance Co., 227 Mo. 100; The Sussex Mut. Ins. Co. v. Woodruff, 26 N. J. L. 541, l. c. 555.] In 25 R. C. L. 1330, Section 14, the doctrine is stated thus:

"Undoubtedly a surety, upon the payment of his principal's debt, is ordinarily entitled to be subrogated to the rights of the creditor to all the securities held by him. But this right of necessity depends upon the superiority of his equities. That the surety on one bond has paid the debt does not alone entitle him to step into the creditor's shoes and recover what he has expended from bondsmen on another obligation. To entitle him to do so, his equities must be superior to those of the sureties on the other bond. If the execution of one bond has worked no detriment to the sureties on another, and all are alike obligated to pay precisely the same debt, there is no basis for the subrogation of any of the creditor's rights against others. In such a case the most that can be said is that the equities are equal—a condition of things essential to contribution, but fatal to subrogation. Where the security consists of the responsibility of an individual, becoming a later surety or guaranty for the same debt of the principal, there arises a conflict of equities, which may give rise to new questions as to priority between the former and the latter surety. Such latter surety, stipulating at the instance of the principal to pay the debt, suffers no absolute injustice in being obliged to do so, since he is compelled to perform no more than he undertook, and had no right to complain that he is not allowed to use, as a payment by himself, the money which proceeds from another person whom his principal was previously bound to save harmless." [See, also, Mitchell v. Dewitt, 25 Tex. Sup. 180.]

It is obvious that the execution of the note and mortgage and the sale of the note to the security company preceded the contract by which the plaintiff insured the security company. It is true that the open policy was executed before Doerr executed the note, but the open policy provides that the insured should declare for insurance "under this policy every car financed by them upon which there

is either a mortgage interest or any indebtedness of any amount whatever due or to become due them, as far as it shall be in their power to control this insurance; and declarations so made shall be considered as a binder under this contract pending to issue a certificate to evidence the transaction.'' In other words, under the open policy the security company obtained insurance upon this particular car as soon as it became the owner of the note and mortgage and had declared the car for insurance. Under such circumstances both the insurance company and Maddox were secondarily liable so far as Doerr was concerned, but as between themselves the insurance company was primarily and Maddox secondarily liable, because that was their relation to the security company under whom both claimed the right of subrogation. [Mitchell v. Dewitt, 25 Tex. Supp. 180, 78 Am. Dec. 561; Southwestern Insurance Co. v. King, 172 Pac. 74; L. R. A. 1918D, 1188; Fidelity & Deposit v. Bowen, 123 Iowa, 356, 98 N. W. 897, 6 L. R. A. (N. S.) 1021, 6 A. & E. Ann. Cas. 399; Mass. Bonding & Ins. Co., 208 Mo. App. 560; Commercial Credit Co. v. Eisenhour, 236 Pac. 126; Am. Cent. Ins. Co. v. Weller, 212 Pac. 803.]

There is another reason recognized by some authorities why the equities as between an insurance company secondarily liable and the surety on the note secured by mortgage on the insured property are in favor of the surety and against the insurance company. The insurance company only paid what it contracted primarily to do, but notwithstanding this fact it still retains the premiums or the profit of its contract and seeks reimbursement from one who, under a wholly separate and independent contract, might have been required to pay. The premium which was received by the company is considered a full equivalent for the payment of the loss where the insurance company insured the property itself and not the debt. [Plate Glass Underwriters Mut. Co. v. Realty Co., 219 Mo. App. 186; Am. Cent. Ins. Co. v. Weller, 212 Pac. 803.]

Appellant seeks to sweep aside all consideration of the priority of equities by the assertion that no one is entitled to subrogation who has not paid the debt, and therefore Maddox had no right of subrogation. Appellant invokes the equitable doctrine of subrogation whereby equity, without regard to privity of contract or express stipulation, transfers all the rights of a creditor to another in order to compel a debt to be ultimately paid by him, who should have paid it in the first place. But when respondent calls attention to the fact that the stream of equity runs in the other direction, appellant gives a most harsh, strict, and literal reason why respondent should not be heard. It is true that one may not sue to recover from his principal upon the ground of subrogation unless he has actually suffered a loss, because the doctrine only seeks to reimburse him who has paid what another should have paid. But

the priority of equities is determined by the nature of the contracts whereby secondary liability was incurred; otherwise, litigation would move endlessly in a vicious circle. One guarantor or surety upon payment of the debt, would be permitted to recover from another, who in turn, having paid the judgment, could sue him whose judgment he had satisfied, and so on *ad infinitum*.

What we have said disposes of appellant's claim to subrogation upon general principles of equity. However, the policy contains a contract for subrogation. It is held that while the right of subrogation is imported into a transaction by principles of equity, yet it is dependent on the contract to the extent that it grows out of conditions resulting from the due observance of the contract, and it must not be inconsistent with the terms thereof. [Capen v. Garrison, 193 Mo. 335, 92 S. W. 368, 5 L. R. A. (N. S.) 838.] The express terms of a contract of insurance may be such that the insurance company is a surety or guarantor for both the principal and the former surety. [Craythorne v. Swinburne, 14 Ves. 160.] It is therefore necessary to determine whether there is anything in the appellant's contract which gives it a right to proceed against Maddox. It is plain that the insurance company is not a guarantor or indemnitor for Maddox. There was no contract between them. Yet, there would have been no infringement of the rights of Maddox had the appellant contracted with the security company that in the event the company should become liable to the security company, but not to the owner of the automobile who was the maker of the note, then on payment of the loss the insurance company should be entitled to an assignment of the note with the right to proceed against the maker and all persons secondarily liable. The express contract provided that in regard to any payment made under the stipulation the insured agreed to *subrogate* to the insurance company all its rights *with all securities held as collateral to such indebtedness;* and it was provided that upon such payment *the company shall be subrogated to the extent of* such payment to all rights of the insured to collect the balance of *the purchase money, if any, still due upon the automobiles insured thereunder.* This stipulation expressly contracts for subrogation and not for an unconditional assignment of the note. An unconditional assignment would have carried with it the liability of the surety on the note, but subrogation carries with it only the rights to fix liability upon him who is primarily liable. The provision that the subrogation shall include all securities held as collateral to such indebtedness only contracts for that which would have been given by the law. The liability of Maddox was not a security held as collateral to the indebtedness. [Dolan v. Talle, 263 S. W. 244.] Collateral security means a pledge of incorporeal property. [Winfrey v. Strother, 145 Mo. App. 115; A. H. Averill Machinery Co. v. Bain, 148 Pac. 334; Turner v. Commercial Savings Bank, 87

S. W. 918; Butler v. Rockwell, 23 Pac. 462; McCormick v. Falls City Bank, 57 Fed. 107.]

The contract for subrogation only expresses that which the law would have read into the contract as a matter of implied intent had there been no stipulation at all. The note was paid so far as Maddox was concerned. The trial court did not err in sustaining the motion for new trial.

The order sustaining the motion for new trial is affirmed and the cause remanded. *Lee, C.,* concurs.

PER CURIAM:—The foregoing opinion by BARNETT, C., is hereby adopted as the opinion of the court. All concur, except *Trimble, P. J.,* absent.