## COLVIN v. MILLARD.

### No. 9053.

Court of Civil Appeals of Texas. San Antonio.

April 19, 1933.

Rehearing Denied June 21, 1933.

Louthan & Carroll, of San Benito, for appellant.

T. A. Kinder, of Brownsville, for appellee.

FLY, Chief Justice.

Appellee filed this action against W. B. Hinkley and W. H. Colvin, Jr., to recover of them on a certain transaction connected with a promissory note executed by said W. B. Hinkley and wife, and R. B. Hinkley and wife, to the Federal Land Bank of Houston, for $10,000, which was secured by the said parties by a deed of trust on a certain tract of land in Cameron county. It was alleged that certain partial payments on the principal and accrued interest had not been paid by W. B. Hinkley, and appellee sought to foreclose a lien given by W. B. Hinkley on the part of the land allotted to him in a partition between him and R. B. Hinkley. By transfer, C. D. Millard had become owner of the notes. The amount sued for by Millard was $585.38, as evidenced by a note given by W. B. Hinkley. The case was tried without a jury and judgment was rendered against W. B. Hinkley for $703.75 and the foreclosure on W. B. Hinkley's part of the land as against all of the defendants.

Appellant filed a cross-action in the cause against the appellee, Millard, and the Hinkleys, alleging that a mortgage had theretofore been given by W. B. Hinkley to a certain bank on the tract of land which was the security for the $10,000 note herein named, and that note and lien were of a later date than the note and lien given by the Hinkleys to the Federal Land Bank of Houston.

The parties, through the record, present the following agreed facts and the issues of law to be determined by this court:

"1. That on September 28th, 1921, R. B. Hinkly and wife and W. B. Hinkly and wife gave a deed of trust to M. H. Gossard, trustee, securing payment of their joint note of that date for $10,000.00 to the Federal Land Bank of Houston, which deed of trust was properly recorded immediately thereafter.

"2. That on December 24th, 1928, W. B. Hinkly and wife gave a deed of trust to Jno. T. Lomax, trustee, securing payment of their joint note of that date for $15,000.00 to the Farmers State Bank of San Benito, Texas. which deed of trust was properly recorded immediately thereafter, and covered the undivided interest of W. B. Hinkly in the same real property as that described in and covered by the Federal Land Bank deed of trust.

"3. That on December 18th, 1929, R. B. Hinkly and W. B. Hinkly, joined by their wives, executed a partition deed dividing the real property covered by the deeds of trust above mentioned, which deed of partition was properly recorded immediately thereafter.

"4. That on October 14th, 1930, W. B. Hinkly and wife gave a deed of trust to Jno. T. Lomax, trustee, securing payment of their joint note of that date for $3,350.00 to the Farmers State Bank of San Benito, Texas, which deed of trust was recorded immediately thereafter, and covered the real property partitioned to W. B. Hinkly in the deed mentioned last above.

"5. That on April 8th, 1931, W. B. Hinkly executed the note sued upon, which note was properly recorded immediately thereafter.

"6. That on July 11th, 1931, Lyford National Farm Loan Association executed an assignment, without recourse, of the note sued upon, to the plaintiff Millard, and on that day executed to him a lien assignment, which lien assignment was not recorded prior to the date of trial of this cause.

"7. That on October 6th, 1932, the debts secured thereby being in default, the deeds of trust mentioned in paragraphs 2 and 4 above were foreclosed by trustee's sale, the Farmers State Bank of San Benito being the purchaser at the trustee's sale.

"8. That on October 19th, 1931, the defendant W. H. Colvin, Jr., purchased the lands mentioned in the foreclosure deeds, from the Farmers State Bank of San Benito, Texas, and on that day that bank executed its deed of conveyance to him, which deed was properly recorded immediately thereafter.

"9. That this suit was filed by the plaintiff on March 8th, 1932, against W. B. Hinkly and W. H. Colvin, Jr., and the defendant W. H. Colvin, Jr. filed an answer making R. B. Hinkly a party to the suit, and an answer was filed herein by R. B. Hinkly.

"Issues of law involved.

"1. Is the judgment of the trial court that the plaintiff ought to recover as prayed for in his petition, supported by the testimony adduced at the trial of the cause?

"2. Was payment of the note sued upon secured by a lien superior to the deed of trust lien under which the defendant Colvin obtained his title?"

The promissory note given by W. B. Hinkley to the Lyford Bank is as follows:

"$585.38

"Raymondville, Texas, April 8, 1931.

"For value received, I, we, or either of us, promise to pay to the order of Lyford National Farm Loan Association, at Raymondville, Texas, the principal sum of $585.38, lawful money of the United States of America, with interest at the rate of 8 per cent per annum from date until paid, payable 90 days after date.

"If this note shall be collected by legal proceedings, or shall be placed in the hands of an attorney for collection after maturity, it is hereby agreed that a sum equal to ten per cent of the principal and interest then remaining unpaid shall be paid to the legal owner or holder thereof as attorney or collection fees.

"This note is given in renewal and extension of the semi-annual installment due The Federal Land Bank of Houston on the first day of March, 1929, and March 1st, 1931, being a part of the 663.47 acres noted in deed of trust to M. H. Gossett, trustee. This lien applies to 480 acres owned by me, which is shown of record in the deed records of Cameron Co. and contained in the loan No. 5488 in Pedro Villareal tract, on an amortization note fully described in and secured by a deed of trust executed by W. B. Hinkley, et al. to M. H. Gossett, Trustee, for the use and benefit of said Bank, which installment the payee herein has paid to The Federal Land Bank of Houston at our instance and request, and it is agreed that this note is secured by said deed of trust in exactly the same manner as if this note were specifically described in said deed of trust, and all the rights and powers given by said deed of trust to the trustee named therein in regard to the amortization note therein described shall exist as security for this note save and except that the lien securing payment of this note is hereby made subordinate to the lien in favor of the Federal Land Bank of Houston securing the unpaid balance of the amortization note referred to above; this note being given merely for an extension of time of payment of the installments above referred to.

"W. B. Hinkley."

The recitations in the note, as well as all the other facts bearing on the subject, show that the money was obtained to be paid on the $10,000 note. The evidence shows that

the Lyford Loan Association, which let W. B. Hinkley have the money to pay on the original debt to the Houston Land Bank, had indorsed the $10,000 note secured by a lien on the land, and was secondarily liable for the payment of the note according to its face, tenor, and effect. The Lyford Loan Association had the power and authority to pay the whole of the $10.000 note or any part thereof and when it did so it became subrogated to all the rights held by the Houston Land Bank. The surety or indorser of the note not being primarily liable, could protect himself or itself by paying whatever sum might be due on the lien debt, and at once all the rights of the creditor in the premises would accrue to the benefit of the indorser. If the claim of the Houston Land Bank was superior to the claim for the $15,000, which was secured by a second lien, then any part of the note for $10,000 paid by any one secondarily liable for it would be superior to all liens given after the first lien was given. Equity would give to the surety or indorser of a note the same rights of priority and superiority enjoyed by the creditor, and he would come within the protection of the application of the just and equitable rule of subrogation. That rule of equity has for centuries been cherished and executed by the English courts and has been favored by American courts. As said by the Supreme Court of Texas, through Judge Wheeler, in the case of Mitchell v. De Witt, 25 Tex. Supp. 180, 78 Am. Dec. 561: "It is a just and salutary principle, which has been acted on by courts of equity, that a surety who pays the debt due by his principal to his creditor shall have the benefit of the securities for the debt placed in the power of the creditor by the principal." This applies with equal force to one who indorses the debt of another for which he was not primarily liable, but is liable only in a secondary sense.

In the case of Faires v. Cockerell, 88 Tex. 428, 31 S. W. 190, 639, 28 L. R. A. 528, the doctrine of subrogation is reaffirmed and in effect follows the doctrine as announced by Pomeroy's Equity Jurisprudence, § 2343, as follows: "When an obligation is discharged by one not primarily liable for it, but who believes himself to be acting either in performance of a legal duty, or for the protection of a legal right, or at the request of the party ultimately bound, and even in certain other cases, favored by public policy, where none of the above circumstances may be present, the party thus discharging the obligation is entitled in equity to demand, for his reimbursement, and subject to any superior equities, the performance of the original obligation, and the application thereto of all securities and collateral rights held by the creditor. The same equity which seeks to prevent the unearned enrichment of one par-

ty, at the expense of another by actions for reimbursement, contribution, and exoneration, operates here, by creating a relation somewhat analogous to a constructive trust, in favor of the subrogee, or party making the payment, in all legal rights held by the creditor, and the subrogee may proceed to enforce the trust."

Pomeroy extends the doctrine so as to include the indorser as well as any other party who may pay off the debt under the belief that he is liable for the same. The appellee herein was the assignee of the note and lien given by W. B. Hinkley to the Lyford Loan Association and had the right and authority to collect the debt. Appellant contends that Millard was a straw man in place of R. B. Hinkley, but if that had been proved, as it was not, it would not have destroyed the equity of subrogation, for R. B. Hinkley might have obtained the right of subrogation if he had directly paid and discharged a sum due on the debt by W. B. Hinkley. The facts clearly establish the right of subrogation in the Lyford Loan Association, which it transferred to Millard, and the trial court rightly protected him in the collection of his debt.

The judgment is affirmed.